## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ONE WORLD, LLC** and **GABRIEL CHALEPLIS,** | |
| Plaintiffs, | |
| v. | **Civil Action No:** _____ |
| **IOANNIS MANOLAKOS, 9 HUNTINGTON STREET LLC, RAYMOND C. GREEN FUNDING, LLC, and REALTY CAPITAL, LLC,** | |
| Defendants. | |

## VERIFIED COMPLAINT

Plaintiffs One World, LLC ("One World") and Gabriel Chaleplis ("Chaleplis") (collectively "Plaintiffs") hereby bring this Verified Complaint against defendant Ioannis Manolakos ("Manolakos") in connection with Manolakos' participation in and receipt of funds from a scheme to defraud Plaintiffs of millions of dollars.  Plaintiffs also seek the approval of a memorandum of *lis pendens* with respect to the title of certain real property located at 11 Norma Way, Middleton, Massachusetts (the "Middleton Property"), which Manolakos purchased using converted One World funds, and then fraudulently transferred to defendant 9 Huntington Street LLC ("9 Huntington") in March 2020.  Plaintiffs seek a declaration that the mortgages and security agreements in favor of Manolakos and defendants Raymond C. Green Funding, LLC ("RCG Funding") and Realty Capital, LLC ("Realty Capital") are void.

## JURISDICTION & VENUE

1.      This Court has diversity jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1332 because the action is between citizens of different states and the amount in controversy exceeds $75,000.

1

2.     This Court also has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. 1330 because the action is brought under the laws of the United States, and in particular: (i) the Racketeer Influenced & Corrupt Organizations Act ("RICO") codified at 18 U.S.C. 1961 et. seq.; and (ii) the Declaratory Judgment Act codified at 28 U.S.C. 2201 et. seq.

3.     Venue is proper in the District of Massachusetts pursuant to 28 U.S.C.  § 1391(a), (b)  and (c) because Manolakos currently conducts and/or conducted business directly in the Commonwealth of Massachusetts and is domiciled in Massachusetts, and was doing so during the time period in controversy.  In addition, venue is proper since Manolakos specifically, continuously and systematically received Plaintiffs' diverted and stolen funds into the District of Massachusetts.  Moreover, venue is proper since the facts and events giving rise to this controversy substantially occurred in Massachusetts and involve real property and banking accounts in Massachusetts that Manolakos used to receive and divert Plaintiffs' stolen funds. Venue is also proper in the District of Massachusetts since Manolakos' wrongful conduct specifically occurred in the District of Massachusetts, including Manolakos' participation as middle man, conduit and co-conspirator to assist other wrongdoers in fraudulent stealing and diverting Plaintiffs' funds out of One World into Manolakos' own personal accounts, and upon information and belief, those of his businesses, which he then used to purchase real property in his name and/or to finance his lifestyles and businesses.  Venue is further proper in this District due to Manolakos' participation and assistance in the theft and diversion of Plaintiffs' funds out of One World's bank accounts for purposes of misappropriating Plaintiffs' funds to Manolakos.

## THE PARTIES

4.     One World is a Delaware limited liability company having its current registered business address at 3422 Old Capitol Trail, Suite 700, Wilmington, Delaware 19808-6192.

5.      Chaleplis is a foreign citizen of the United Kingdom having his principal residence located at 153 Worple Road, SW20 8RQ, London, United Kingdom.  Chaleplis is currently the one hundred percent (100%) member of One World.

6.      Manolakos is a citizen of the Commonwealth of Massachusetts having his principal residence located at 7 Country Club Lane, Unit # 7, Middleton, Massachusetts 01949. Manolakos is the President, Treasurer, Secretary and Director of Quick Manufacturing Co. ("Quick Manufacturing"), and, upon information and belief, is also the owner or one of the owners of Quick Manufacturing.  Manolakos is also the manager of Quick Properties, LLC ("Quick Properties") and, upon information and belief, is also the owner or one of the owners of Quick Properties.  Upon information and belief, Manolakos has utilized Quick Manufacturing and Quick Properties for the diversion of Plaintiffs' funds described below.

7.      9 Huntington is a Massachusetts limited liability company with an office located at 9 Huntington Street, Nantucket, MA 02554.

8.      RCG Funding is a Massachusetts limited liability company with an office located at 155 Federal Street, #1300, Boston, MA 02110.

9.      Realty Capital is a Massachusetts limited liability company with an office located at 155 Federal Street, #1300, Boston, MA 02100.

## FACTS

10.     This action is related to an action pending in this Court titled *One World, LLC v. Nikolaos Onoufriadis*, C.A. No. 20-CV-11580-RWZ (the "Onoufriadis *Lis Pendens* Action"). This action and the Onoufriadis Action are also related to an action pending in the Southern District of New York, *One World, LLC et al.*, *v. Onoufriadis et al.*, C.A. No. 1:20-cv-05802-CM (the "New York Action").

**Chalepis Meets Onoufriadis, Rodgers and Karloutsos**

11.     Before May 2017, Chalepis endeavored to create an investment company in the United States to invest in American business opportunities and traditional investments.

12.     To form, establish and advance the creation and operation of Chalepis' investment company, Chalepis consulted with a friend in Greece.  Nikolaos Onoufriadis, an individual living in Massachusetts, learned from Chalepis' friend in Greece that Chalepis was seeking to create such an American investment company.  Onoufriadis approached Chalepis about assisting Chalepis in the United States to establish an American investment company, and to assist such company in developing, researching, identifying, consummating and managing American investments.

13.     Thereafter, Chalepis spoke with Onoufriadis regarding Chalepis' intention and plan to establish the American investment company.  During those discussions, Onoufriadis intentionally and falsely held himself out to Chalepis as having business and investment experience in various American industry and business sectors that Chalepis was interested in investing in, such as real estate, energy and petrochemicals, online gaming and lottery, traditional and conventional investments, telecommunications and startup company opportunities.

14.     Onoufriadis also recommended to Chalepis that they partner and work with Onoufriadis' very good friend and best man Michael Karloutsos ("Karloutsos") to operate and advance Chalepis' American investment vehicle.

15.     Onoufriadis sought Karloutsos' consultation and assistance regarding Chalepis' American investment endeavor based upon Karloutsos':  (i) presence in the United States and, in particular, New York; (ii) experience in both American and Greek politics in the area of public

relations, government relations and lobbying as a consultant between United States
citizens/companies and the Greek government, partially through Karloutsos' consulting company
MAK Consulting, LLC; and (iii) political and social connections in the United States stemming
from Karloutsos' political involvement, his father's position within the Greek Orthodox Church
here in the United States, his lobbying activities between U.S. citizens/companies and the Greek
government, his public relations work and his purported consulting experience.

16.     Onoufriadis represented to Chaleplis that Karloutsos was highly trustworthy,
competent and experienced in identifying and developing business opportunities, and that
Karloutsos and Onoufriadis were extremely close.  Onoufriadis also highlighted his close
relationship with Karloutsos by citing the fact Karloutsos' son baptized Onoufriadis' son.

17.     Following numerous very general discussions thereafter between Chaleplis,
Onoufriadis and Karloutsos regarding the possible formation, management and operation of
Chaleplis' American investment company, Karloutsos highly recommended that Chaleplis
involve Karloutsos' other very good friend James Rodgers ("Rodgers"), an attorney, to assist in
managing Chaleplis' American investment vehicle, to handle the company's legal work, and in
researching, developing, pursuing and consummating American business opportunities and
investments for Chaleplis' American investment company.

18.     During their discussions, Karloutsos further advised Chaleplis to use Onoufriadis
and Rodgers as formal officers of One World rather than Karloutsos.  Karloutsos made this
suggestion based on the fact Karloutsos could not "formally" or "publicly" participate in the
membership and/or management of One World since Karloutsos (based on his lobbying history
and family connections) was taking a position with the U.S. State Department in Washington
D.C. in its Protocol Office as of July 23, 2017.

19.      Karloutsos and Onoufriadis recommended that Chaleplis allow Onoufriadis to manage the day-to-day operations of Chaleplis' American investment company, while Karloutsos "silently" worked with Onoufriadis and Rodgers on Chaleplis' and One World's behalf to research, identify, pursue, develop and consummate American business opportunities and investments for Chaleplis' investment company that was ultimately One World.

Onoufriadis, Rodgers and Karloutsos Induce Chaleplis to Form One World

20.      On or about May 24, 2017, Chaleplis formed One World by filing a Certificate of Formation with the Delaware Secretary of State to pursue American business opportunities and investments.

21.      Subsequently, based upon all of Chaleplis' previous discussions with Onoufriadis and Karloutsos, Chaleplis agreed to meet with Karloutsos, Onoufriadis and Rodgers in person at a Manhattan restaurant on September 28, 2017 (the "September 28, 2017 Meeting").

22.      The purpose of the September 28, 2017 Meeting was for Chaleplis, Karloutsos, Onoufriadis and Rodgers to: (i) all meet one another in person at the same time to discuss Chaleplis' American investment vehicle goals and endeavors; (ii) for Chaleplis to learn from these individuals about Onoufriadis', Rodgers' and Karloutsos' alleged experience, capabilities, knowledge and ideas in identifying, making, developing and managing American investments and business opportunities; (iii) for Chaleplis to learn about investment ideas Karloutsos, Rodgers and Onoufriadis had for Chaleplis in line with Chaleplis' interests; and (iv) to negotiate and discuss the contractual terms, conditions, business understandings and details for Manolakos' potential  management of One World's investments, business operations, capitalization and business/investment objectives.  The purpose of the meeting was to also

discuss Onoufriadis, Rodgers and Karloutsos managing, operating, developing and advancing

One World's investment opportunities and operations on Chaleplis' behalf.

23.     During the September 28, 2017 Meeting, Onoufriadis, Karloutsos and Rodgers

solicited and requested Chaleplis that he allow them to manage, supervise, research, identify,

pursue, develop and consummate all of One World's business and investment opportunities, and

for Chaleplis to allow them to cooperatively work and coordinate with one another to identify,

research, pursue, develop and consummate American business and investment opportunities for

Chaleplis' investment vehicle in the form of One World.

24.     Specifically during the September 28, 2017 Meeting in Manhattan, Karloutsos,

Onoufriadis and Rodgers solicited and intentionally made materially false statements to

Chaleplis that they had the necessary experience to, and were capable of, successfully

identifying, finding, developing, pursuing and consummating American investment and business

opportunities that Chaleplis was interested in as outlined above.  These intentionally false and

material representations reasonably induced Chaleplis into agreeing to partner with Onoufriadis,

Karloutsos and Rodgers in assisting and managing Chaleplis' American investment vehicle.

25.     During the September 28, 2017 Meeting, Onoufriadis solicited Chaleplis to manage

and operate One World, while holding himself out as highly experienced, knowledgeable and

capable of managing One World in identifying, developing, pursuing and consummating

business opportunities and investments in the United States.  This despite the fact Onoufriadis

had no such experience or knowledge.  Chaleplis reasonably relied upon those material

misrepresentations in agreeing to make Onoufriadis the Manager of One World and a member of

the company.

26.     During the September 28, 2017 Meeting, Rodgers solicited Chaleplis to serve as One World's Chief Legal Officer, while holding himself out as highly experienced and capable of handling One World's legal needs relating to identifying, developing, pursuing and consummating business opportunities and investments in the United States in accordance with all related legal issues.  This despite the fact Rodgers had no such experience or knowledge in such areas of the law or business.

27.     Following the foregoing meetings in Manhattan and the intentionally false misrepresentations and concealments that Onoufriadis, Karloutsos and Rodgers made, Chaleplis was reasonably induced into agreeing to hire: (i) Onoufriadis as One World's Manager in exchange for compensation; and (ii) Rodgers as One World's Secretary and Chief Legal Officer in exchange for compensation, based upon terms and conditions they all discussed during the **September 28, 2017 Meeting in New York City.**

28.      Rodgers then prepared a written Operating Agreement for One World that Rodgers and/or Onoufriadis forwarded to Chaleplis for signature.

29.     That written Operating Agreement was supposed to memorialize the contractual terms of the agreement that Chaleplis had discussed and negotiated with Rodgers, Onoufriadis and Karloutsos during their in-person meeting and negotiations at the September 27, 2017 Meeting.

30.      The Operating Agreement intentionally omitted any reference to Karloutsos having involvement and/or profit interest in the company, despite the fact that Karloutsos would, because Karloutsos was still serving in his position with the Department of State at the time.  The Operating Agreement also made that omission despite the fact that Karloutsos was also going to be involved in the management and business operations of One World in seeking out and

developing American business opportunities, and in assisting Onoufriadis and Rodgers in managing One World.

31.     On or about September 30, 2017, Chaleplis and Onoufriadis executed the written Operating Agreement for One World (the "Operating Agreement").

32.     Pursuant to Paragraph 3.1/4.1 of the Operating Agreement, Chaleplis was the eighty percent (80%) member in One World.

33.     Pursuant to Paragraph 3.1/4.1 of the Operating Agreement, Chaleplis was also the 100% profit member of One World since Chaleplis contributed all of the capital into One World, and since One World was specifically formed to serve as an American investment vehicle for Chaleplis.

34.     Since One World was Chaleplis' personal investment vehicle to make American investments and pursue American business opportunities, all of the capital contributions made into One World were made by Chaleplis between November 2017 and July 2019.

35.     Pursuant to Paragraph 3.1/4.1 of the Operating Agreement, Onoufriadis was the twenty percent (20%) member in One World.

36.     Pursuant to the Operating Agreement, and in accordance with Chaleplis' purpose for forming One World, Chaleplis made repeated and numerous capital contributions to One World between November 2017 and July 2019 for the sole and exclusive purpose of "pursu[ing] investment and business opportunities in the United States," and any other investments the "majority" of the members (i.e. Mr. Chaleplis as the eighty percent (80%) member and 100% profit member) voted to approve.

37.     Pursuant to Paragraph 2.1 of the Operating Agreement and Paragraph 3.3(a) of the Operating Agreement's general provisions, Onoufriadis was appointed and designated as the sole Manager of One World.

38.     Pursuant to Paragraph 3.3(c) of the Operating Agreement, Rodgers was appointed the Chief Legal Officer and Secretary for One World.

39.     In reality, Karloutsos utilized his good friends Onoufriadis and Rodgers as "front men" for Karloutsos to participate in the management, operations and profitability of One World due to Karloutsos' inability to consult, work and/or lobby in the private sector as a result of working in the U.S. State Department for the Trump Administration.

One World Commences Business Operations

40.     Subsequent to the above events, Chaleplis made capital contributions to One World at various intervals between November 2017 and July 2019.

41.     Following the execution of the Operating Agreement, Onoufriadis as Manager had signatory authority on all One World bank accounts utilized by the company to hold the company funds.

42.     Onoufriadis' signatory authority for One World bank accounts included, but were not limited to: (i) three (3) separate Citizens Bank accounts; (ii) an Alex Brown/Raymond James investment account; and (iii) a Hancock Whitney account.

43.     Onoufriadis, Karloutsos and/or Rodgers all had existing relationship with Citizens Bank and unnecessarily opened three (3) separate One World bank accounts with Citizens Bank (rather than only one) with the specific intent of Onoufriadis, Rodgers and Karloutsos misappropriating Plaintiffs' funds through the unnecessary diversion via electronic wiring and movement of Chaleplis' One World capital contributions as outlined below.

44.     Among those One World bank account, Chaleplis only had access to the Alex Brown/Raymond James account.

45.     Moreover, most of Chaleplis' capital contributions were made into Rodgers' Citizens Bank IOLTA attorney trust account for ultimate transfer to One World's bank accounts referenced above.

**The Medical Cannabis Scheme**

46.     Following the formation of One World, Onoufriadis, Karloutsos and Rodgers presented Chaleplis with a phony purported "business opportunity" that was actually a scheme and artifice designed to misappropriate and convert Chaleplis' investment proceeds from One World, and which centered upon One World allegedly entering and pursuing the Greek medicinal cannabis market that did not yet exist.

47.     Beginning in March 2018, Chaleplis met with Karloutsos, Onoufriadis and Rodgers several times in New York City.  Leading up to and during those meeting, Karloutsos, Onoufriadis and Rodgers described the purported Greek medicinal cannabis market opportunity to Chaleplis, which involved One World advancing the necessary funds to capitalize, create and/or enter the Greek medicinal cannabis market for the following alleged requirements: (i) applying for all licenses and permits needed to form a vertically integrated medicinal cannabis business (cultivation, agriculture, harvesting, processing, distribution, storage, manufacturing, product production, etc.); (ii) paying for all purported lobbying, governmental relations and other service fees allegedly needed to obtain such licenses; (iii) developing and purchasing the land, tooling, facilities, equipment, human capital, etc. necessary to conduct and carry out such a business; and (iv) all other infrastructure and services needed to develop and establish a

vertically integrated medical cannabis business licensed to operate under Greek law (the "Medicinal Cannabis Scheme").

48.     Karloutsos, Onoufriadis and Rodgers further discussed the Medicinal Cannabis Scheme in detail with Chaleplis, which specifically included discussions and details concerning: (i) the alleged required funding and budgeting for the Medicinal Cannabis Scheme in the millions of dollars; (ii) the number of companies needed to be formed and managed to hold the necessary licenses and conduct the various components of the vertically integrated nature of the Medicinal Cannabis Scheme; (iii) the capital and corporate structure for the Medicinal Cannabis Scheme using One World funds exclusively; (iv) the targeting and acquisition of the necessary assets and human capital to establish the Medicinal Cannabis Scheme; and (v) the time lines associated with establishing the business.

49.     Notably, while presenting the Medicinal Cannabis Scheme to Chaleplis and One World, Onoufriadis, Karloutsos and Rodgers presented a phony written budget to Chaleplis claiming to itemize and estimate the actual costs in the millions to capitalize and launch a vertically integrated medicinal cannabis company in Greece.

50.     Neither Onoufriadis, Karloutsos nor Rodgers ever disclosed to Chaleplis that Onoufriadis, Karloutsos and Rodgers were actually intending and planning on diverting and misappropriating One World's funds to themselves for their own personal use, under the phony guise of the Medicinal Cannabis Scheme through phony Greek company conduits, including Conmave Monoprosopi IKE ("Conmave") and Bioprocann.  Upon information and belief that scheme also included the use of Manolakos as recipient and conduit for the theft and diversion of those funds.

**Chaleplis is Induced to Make Capital Contributions to One World**

51.     Following these discussions and meetings in New York City with Onoufriadis, Rodgers and Karloutsos, Chaleplis made the following capital contributions into One World (through Rodgers' IOLTA attorney trust account) in reasonable reliance upon intentional material misrepresentations that they presented to Chaleplis concerning the Medicinal Cannabis Scheme, so as to provide the necessary capital for that investment: (i) €500,000 on March 12, 2018; (ii) €1,000,000 on March 15, 2018; (iii) €2,700,000 on March 19, 2018; (iv) €10,400,000 on March 30, 2018; and (v) €2,180,000 on December 21, 2018.

52.     Chaleplis made the foregoing capital contributions into One World while intentionally kept unaware of the fact the Medicinal Cannabis Scheme was in fact a fraudulent scheme and artifice that Karloutsos, Onoufriadis and Rodgers had designed and conceived to convert, divert and misappropriate Plaintiffs' funds to themselves and, upon information and belief, to Manolakos for his own personal use.

53.     Chaleplis made those wire transfers as One World capital contributions unaware of Manolakos' involvement and intentional concealment of the scheme and artifice of the Medical Cannabis Scheme designed to misappropriate Plaintiffs' funds. Onoufriadis, Karloutsos and Rodgers Convert One World's Funds with Manolakos' Knowledge and Assistance Through Conmave and Bioprocann.

54.     Following Chaleplis' capital contributions into One World, Onoufriadis, Karloutsos and Rodgers collectively converted, misappropriated and stole at least $4,600,000 (approximately €4,000,000) from One World and Chaleplis by way of three (3) separate international wires from One World's Citizens Bank account to Conmave.

55.     The three (3) separate international wires from One World's Citizens Bank account to Conmave were made and/or initiated by Onoufriadis, Rodgers and Karloutsos with, upon information and belief, Manolakos' knowledge and participation, as follows: (i) $1,813,945 on May 22, 2018; (ii) $1,167,900 on June 18, 2018; (iii) $1,693,455 on June 18, 2018.

56.     To conceal and justify the theft of funds from Chaleplis to One World, Onoufriadis and Rodgers, in concert with Karloutsos, prepared a phony promissory note for execution by a purported Conmave representative in Greece in One World's favor.

57.     On or about October 17, 2018, Onoufriadis, Karloutsos and Rodgers again converted and stole at least another $3,746,600 (approximately €3,250,000) from One World by way of international wire to Conmave.

58.     To conceal and justify the theft of funds from Chaleplis to One World, Onoufriadis, Karloutsos and Rodgers prepared a second phony promissory note for execution by a purported Conmave representative in Greece in One World's favor.

59.     Conmave has never made a single payment of any principal or interest to One World pursuant to either of the promissory notes.

60.     On or about June 26, 2018, Onoufriadis, Karloutsos and Rodgers diverted and/or misappropriated approximately $3,534,900 (€3,000,000) from One World to the Greek corporation Bioprocann by way of international wire.

61.     The international wire from One World to Bioprocann was made, upon information and belief, with Manolakos' knowledge and participation.

62.     Onoufriadis, Rodgers and Karloutsos advised Chaleplis that the "loan" to Bioprocann was also for purposes of investing in the Medical Cannabis Scheme.

63.     Upon subsequently discovering the situation surrounding the improper motives for diverting One World funds through Bioprocann and to other sources in Greece, Chaleplis undertook and implemented measures in Greece that recovered approximately €2,200,000 out of the €3,000,000 that was transferred to Bioprocann from One World.

64.     In response to Chaleplis' recovery of approximately €2,200,000 in One World funds from Bioprocann, Onoufriadis and Karloutsos undertook actions in Greece to: (i) cut off Chaleplis' ability to transfer the balance of the €3,000,000 back to One World; (ii) cut off Chaleplis' ability to have his accountant/representatives in Greece monitor and track the status of the balance of the Bioprocann funds; and (iii) change the management of Bioprocann to obstruct Chaleplis' ability to recover the balance of those funds.

65.     Despite Chaleplis' demands for Onoufriadis, Karloutsos and Rodgers to return the remaining €800,000 transferred to Bioprocann back to One World, they have failed and refused to do so.

66.     Bioprocann did not invest a single dollar into the purported Medicinal Cannabis Scheme.

67.     Had Chaleplis been made aware of the true facts behind the Medicinal Cannabis Scheme, and that Manolakos was, upon information and belief, receiving One World funds, he would never have made any of the foregoing capital contributions into One World, and could have recouped and/or preserved his funds.

68.     Plaintiffs are currently missing at least $9,000,000 in One World capital contributions due to the affirmative misrepresentations and failure to disclose material information set forth above, the international diversion of Plaintiffs' funds by Onoufriadis, Rodgers and Karloutsos, and receipt of certain of those stolen and diverted funds by Manolakos.

**Onoufriadis Illegally Diverts Monies to Manolakos**

69.     While serving as One World's Manager, Onoufriadis illegally diverted and

misappropriated at least $363,000 from One World directly to his friends, including at least

$71,000 directly to Manolakos.

70.     There are no promissory notes, mortgages, personal guaranties and/or security

agreements of any kind relating to these purported "loans."

71.     Onoufriadis' diversion of this at least $71,000 from One World to Manolakos was

an additional theft of funds whereby Onoufriadis diverted One World money to himself and his

co-conspirators using third-party friendly "conduits" both in Greece and Europe, and then back

to United States accounts.

72.     The approximately $71,000 transfer to Manolakos was made directly from One

World's Raymond James account to Manolakos' personal bank account # *****4675 with

Community Credit Union of Lynn Bank, Massachusetts on March 9, 2018, which Manolakos

then converted for his personal use.  See One World Raymond James Bank Account Statement

Page #4 containing $70,948 interstate wire from One World to Manolakos' Community Credit

Union of Lynn Bank Account *****4675 at **Exhibit "A"**.

73.     There is no explanation for the wire from One World to Manolakos.

74.     No principal or interest of any kind has ever been paid on the purported $71,000.

Manolakos' Purchase of the Middleton Property

75.     Upon information and belief, Manolakos used Plaintiffs' stolen and

misappropriated funds to purchase a new residential condominium on August 1, 2018,  located at

11 Norma Way, Middleton, Massachusetts (previously, the "Middleton Property").  The

Middleton Property was purchased in Manolakos' name, in an all cash deal for $405,000.  See

Deed and Public Record Search for Manolakos confirming 11 Norma Way purchase without a mortgage at **Exhibit "B"**.

76.     Upon information and belief, Manolakos could not have afforded and/or had the ability to pay all cash for the Middleton Property.

77.     Karloutsos, Rodgers, Onoufriadis and Manolakos all purchased new homes for themselves contemporaneously with one another following the Conmave transfer and the Bioprocann transfer, totaling approximately €10,750,000.

**Manolakos Fraudulently Transfers the Middleton Property to 9 Huntington**

78.     On or about March 10, 2020, Manolakos conveyed the Middleton Property to 9 Huntington for a purchase price of $675,000 ($270,000 above what he had paid for it a year and a half prior).  See Deed from Manolakos to 9 Huntington at **Exhibit "C"**.

79.     The manager of 9 Huntington is an individual named James A. Fuller ("Fuller").

80.     Fuller and Manolakos are both managers of an entity known as 409 East Seventh LLC.  The business address for 409 East Seventh LLC is 4 Electronics Avenue, Danvers, MA 01923, the same business address for Manolakos' other businesses, Quick Manufacturing and Quick Properties.

81.     9 Huntington granted a mortgage to RCG Funding and Realty Capital to secure a construction loan in the original principal amount of $1,090,000.  See RCG and Realty Capital Mortgage at **Exhibit "D"**.

82.     9 Huntington also granted a mortgage back to Manolakos in the original principal amount of $475,000, which was subordinated to the construction loan.  See Manolakos Mortgage at **Exhibit "E"**.

83.     Upon information and belief, Manolakos has an ownership interest in 9 Huntington and therefore 9 Huntington was not a bona fide purchaser.

84.     Manolakos' transfer of the Middleton Property to 9 Huntington was fraudulent because he never had proper title to the Middleton Property and therefore the mortgages are void.

**Plaintiffs' Pending Lawsuits to Recover Their Stolen Funds**

85.     Based upon the foregoing fraudulent scheme and artifice, Plaintiffs filed a currently pending action in the Southern District of New York on July 27, 2020 captioned *One World, LLC, et. al. v. Onoufriadis, et.al.*, C.A. No. 1:20-cv-05802 ("the New York Action") against Onoufriadis, Karloutsos and Rodgers to recover Plaintiffs' stolen and diverted funds. See **Exhibit "F"**.

86.     In addition, Plaintiffs filed a lawsuit in Greece against Conmave and its principal(s)/agent(s) captioned *One World, LLC v. Conmave, et. al*., General Filing # 52277/2020 and Specific Filing # 5698/2020, before the Hon. Eleni Motsovolea (P.J.) on or about July 31, 2020 ("the Greek Action"), to recover Plaintiffs' stolen funds diverted and absconded through Conmave by the foregoing bad actors.  See Excerpts of Translated Greek Complaint at **Exhibit "G"**.

87.     Plaintiffs filed a temporary restraining order and preliminary injunction application in the Greek Action that was granted by the Greek Court on July 31, 2020, resulting in temporary restraint being entered against Conmave and its principal(s)/agent(s) barring them from selling and/or transferring millions of dollars in exotic automobiles and boats that were improperly purchased through Conmave with Plaintiffs' stolen funds. See Excerpts of Translated Greek TRO at **Exhibit "H"**.

88.     Plaintiffs have filed an action in this District of Massachusetts captioned *One World, LLC v. Onoufriadis*, C.A. No. 20-cv-11580-RWZ (the "Onoufriadis *Lis Pendens* Action) for approval to file a *lis pendens* against Onoufriadis' Boston condo unit purchased using almost $2,000,000 of Plaintiffs' stolen funds.  That action was accompanied by a motion for approval to file a *lis pendens*, and successfully resulted in the Hon. Rya W. Zobel of this Court entering a September 2, 2020 Order Approving Memorandum of *Lis Pendens* for filing against Onoufriadis' Condo Unit, purchased using almost $2,000,000 that Onoufriadis stole from Plaintiffs as outlined above.  <u>See</u> Sept. 2, 2020 Order at **Exhibit "I"**.

<u>**COUNT I**</u>

**(Conversion of One World Funds v. Manolakos)**

89.     Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

90.     Manolakos' theft, diversion, embezzlement and/or misappropriation of Plaintiffs' funds for his own personal and business use constitutes conversion of One World's and Chaleplis' funds to the detriment of One World and Chaleplis.

91.     Manolakos' purchase of real property using Plaintiffs' monies that do not belong to him constitutes conversion of Plaintiffs' funds.

92.     Onoufriadis ultimately transferred Plaintiffs' funds to Manolakos' bank accounts, which were used as conduits to divert Plaintiffs' monies in order to misappropriate and convert Plaintiffs' funds.  This includes the $71,000 transfer from One World to Manolakos' Community Credit Union of Lynn, Massachusetts, Account *****4675 on March 3, 2018, and Manolakos' subsequent purchase of the Middleton Property.

93.     In misappropriating Plaintiffs' One World contributions, Manolakos made himself and his bank accounts available to Onoufriadis, Rodgers, Karloutsos and Conmave to receive

Chaleplis' One World capital contributions directly from Plaintiffs' accounts, and from Greek/European accounts, in order to divert and misappropriate Plaintiffs' funds to Manolakos for his own personal and business use without right.

94.     Manolakos therefore assisted, aided and abetted Onoufriadis and the other aforementioned bad actors in the conversion and theft of Plaintiffs' funds.

95.     Manolakos also ultimately and knowingly received portions of those converted funds from Onoufriadis and the other bad actors after Plaintiffs' funds were converted.

96.     As a result, Plaintiffs have been and will continue to be damaged.

## COUNT II

### (Conspiracy to Commit Conversion of One World Funds v. Manolakos)

97.     Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

98.     Manolakos, individually and, upon information and belief, on behalf of his companies, Quick Manufacturing and Quick Properties, conspired with Onoufriadis, Karloutsos, Rodgers and Conmave and Bioprocann by way of an agreement between them to divert, convert and misappropriate Plaintiffs' funds using multiple Citizens Bank accounts, Greek company bank accounts and/or Manolakos' bank accounts concealed to disguise their clandestine wrongful actions, conduct and theft of funds, including but not limited to the theft of Plaintiffs' funds using multiple Massachusetts based bank accounts.

99.     As a result, Plaintiffs have been and will continue to be damaged.

## COUNT III

### (Aiding and Abetting Conversion v. Manolakos)

100.     Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

101.    Manolakos provided assistance to Onoufriadis, Karloutsos, Rodgers and Conmave by way of an agreement among them to divert, convert and misappropriate Plaintiffs' funds by using Manolakos' bank accounts at Massachusetts based banks to conceal wrongful actions and conduct, including the diversion of Plaintiffs One World funds into unnecessary One World accounts with Citizens Bank, and from Conmave or Bioprocann back to Manolakos' own personal accounts that Manolakos then diverted and misappropriated for themselves.

102.    As a result, Plaintiffs have been and will continue to be damaged.

## COUNT IV

### (Unjust Enrichment v. Manolakos)

103.    Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

104.    Manolakos' actions, inactions, misappropriations and conversions outlined above, as well as his receipt and use of Plaintiffs' stolen funds through Onoufriadis', Rodgers' and Karloutsos' scheme and artifice constitutes unjust enrichment to Manolakos' benefit at the expense of One World and Chaleplis.

105.    As a result, Plaintiffs have been and will continue to be damaged.

## COUNT V

### (Accounting v. Manolakos)

106.    Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

107.    Based upon the foregoing actions and wrongful conduct, One World and Chaleplis are entitled to a full accounting from Manolakos to ascertain and identify any and all financial receipts, transactions, thefts, misappropriations and diversions that Manolakos received,

committed and carried out while participating in the above detailed scheme and artifice with

Onoufriadis, Rodgers and Karloutsos outlined in this Complaint.

108.     As a result, Plaintiffs demand such an accounting from Manolakos and are entitled

to such an accounting.

## COUNT VI

### (Constructive Trust – All Defendants)

109.     Plaintiffs repeat and reallege each and every paragraph outlined above with the

same force and effect as if more fully set forth at length herein.

110.     Based upon Manolakos' conversion of One World's and Chaleplis' funds and his

unjust enrichment stemming from: (i) Manolakos' purchase of the Middleton Property for

himself using Plaintiffs' funds; (ii) diverting and converting Plaintiffs' funds to themselves

through his receipt of Plaintiffs' stolen funds via the Bioprocann and Conmave transfers and re-

routes, and other third-party companies and individuals; and (iii) diverting and converting

Plaintiffs' funds to Manolakos' bank accounts, Plaintiffs are entitled to the imposition of a

constructive trust upon all of Manolakos' assets, including but not limited to the Middleton

Property (improperly conveyed to 9 Huntington), all business and personal assets of Manolakos,

all of his bank accounts and all personal or intangible property of Manolakos, including his

interests in Quick Properties and Quick Manufacturing, and all assets that Manolakos have

diverted and/or wrongfully received to themselves or related third parties as outlined above.

## COUNT VII

### (Violation of Federal RICO Act, 18 U.S.C. 1961, et. seq. - Manolakos)

111.     Plaintiffs repeat and reallege each and every paragraph outlined above with the

same force and effect as if more fully set forth at length herein.

112.    Manolakos' partnership and coordination with Onoufriadis, Karloutsos and Rodgers constitutes an "association-in-fact" pursuant to 18 U.S.C. 1961(4).

113.    Manolakos and those other individuals willfully and knowingly engaged in a pattern of racketeering activity involving that "enterprise" and/or their "association in fact."

114.    Manolakos acquired and/or maintained control over One World's and Chaleplis' stolen funds through a pattern of racketeering activity in violation of §1962(b).

115.    Manolakos conducted and participated, directly and indirectly, with Onoufriadis, Karloutsos and Rodgers as an enterprise and "association-in-fact" through a pattern of racketeering activity in violation of §1962(c).

116.    Manolakos and/or Onoufriadis, Karloutsos and/or Rodgers utilized their partnership among themselves to divert and transfer Plaintiffs' monies and investment proceeds to Manolakos and his bank accounts, thereby misappropriating portions of the $9,000,000 of Plaintiffs' investment proceeds for themselves and others, and at least approximately $405,000 of Plaintiffs' funds to Manolakos.

117.    Manolakos shared a common purpose of obtaining pecuniary gain through his design, perpetration, participation, coordination and concealment with Onoufriadis, Karloutsos and Rodgers in the Medicinal Cannabis Scheme, and all were part of a fraudulent scheme and artifice to steal and misappropriate Plaintiffs' funds through Manolakos' use of his own bank accounts to receive and convert Plaintiffs' funds.

118.    The Medicinal Cannabis Scheme was a sustained, well-developed operation organized for the purpose of defrauding Plaintiffs, misappropriating Plaintiffs' funds and concealing that fraud so that Plaintiffs could not put an end to the fraud.  Manolakos played a distinct and significant role in facilitating the fraudulent transfer of Plaintiffs' funds through the

pattern of racketeering, and specifically in allowing himself and/or his business to serve as conduits via their bank accounts in the United States to receive Plaintiffs' stolen funds via interstate and international transfer for their own personal and business uses, and that of Onoufriadis, Karloutsos and Rodgers.

119.    Manolakos' predicate acts constituting a pattern of racketeering include, but were not limited to, the repeated receipt of Plaintiffs' stolen funds, money laundering of Plaintiffs' stolen funds through the various aforementioned business entities and Manolakos' accounts, and international/interstate wire frauds, financial institution fraud, engaging in monetary actions with property derived from unlawful activities such as Manolakos' purchase of the Middleton Property and his businesses' use of Plaintiffs' stolen funds, and wire fraud by re-routing Plaintiffs' funds from Conmave and Bioprocann back into the United States to Manolakos and/or his businesses or agents via international wires.

120.    Manolakos engaged in a conspiracy to violate 18 U.S.C. § 1962(a), (b) and (c) by entering into agreements with Onoufriadis, Karloutsos and Rodgers, and knowingly participated in that conspiracy to advance his own financial benefits at Plaintiffs' expense.

121.    Manolakos agreed and conspired to violate 18 U.S.C. § 1962(a), (b) and (c) by participating, directly or indirectly, through a pattern of racketeering activity as outlined above, and by repeatedly receiving and laundering stolen funds through electronic wire interstate and/or by international wire in violation of 18 U.S.C. § 1341, while Manolakos failed to disclose his knowing receipt of Plaintiffs' stolen funds to Plaintiffs at any point in time.

122.    Specifically, Manolakos in one form or another was involved in the ultimate receipt of Plaintiffs' stolen funds through the predicate acts constituting wire fraud during the relevant time period of May 2017 through December 2018, which include but are not limited to the

24

March 3, 2018 interstate wire of $70,948 from One World's Raymond James bank account to Manolakos' Community Credit Union of Lynn, Massachusetts Account # ******4675 for theft by Manolakos constituting wire fraud.

123.    The foregoing predicate acts committed by Manolakos constitute "racketeering activity" as defined by 18 U.S.C. 1961(1) et. seq., as well as a "pattern of racketeering" as defined by 18 U.S.C. 1961(5), since these predicate acts constituted more than two (2) acts between May 2017 and October 2018.

124.    Manolakos is a "culpable persons" as defined in 18 U.S.C. 1961 in violating §1962(a), (b) and (c) since Manolakos' coordination constitutes an "association-in-fact" for purposes of §1962(c).  Manolakos' actions and patterns of racketeering constitute violations of §1962(a), (b) and (c) of the Racketeer Influenced & Corrupt Organizations Act ("RICO").

125.    Based upon Manolakos' deceptions, predicate acts and omissions outlined above, which all constitute a fraudulent scheme and artifice over Chaleplis' invested capital into One World, Manolakos' pattern of racketeering violated §1962(a).

126.    As a result, Plaintiffs have been and will continue to be damaged.

127.    Plaintiffs are also entitled to treble damages, punitive damages and attorneys' fees from Manolakos as a result of Manolakos' predicate acts and pattern of racketeering pursuant to §1964(c).

## COUNT VIII

### (Conspiracy to Violate Federal RICO, 18 U.S.C. 1961, et. seq. - Manolakos)

128.    Plaintiffs repeat and re-allege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

129.    The predicate acts that Manolakos committed as outlined above constitute a conspiracy to violate §1962(a), (b) and (c) of the federal RICO Act in violation of §1962(d).

130.     Manolakos' predicate acts and pattern of racketeering are the direct and proximate result of Plaintiffs' lost investment proceeds and capital contributions.

131.     As a result, Plaintiffs have been and will continue to be damaged.

132.     Plaintiffs are also entitled to treble damages, punitive damages and attorneys' fees as a result of Manolakos' predicate acts pursuant to §1964(c).

## COUNT IX

### (Fraudulent Transfer – Manolakos and 9 Huntington)

133.     Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

134.     Manolakos improperly utilized stolen One World funds to purchase the Middleton Property in his name and therefore title to the Middleton Property rightfully belongs to One World.

135.     Upon information and belief, Manolakos transferred the Middleton Property to 9 Huntington with the intent to hinder, delay or defraud Plaintiffs.

136.     9 Huntington was not a bona fide purchaser.

137.     Because Manolakos never had title to the Middleton Property, the conveyance of the Middleton Property to 9 Huntington was not valid transfer.

## COUNT X

### (Declaratory Judgment – All Defendants)

138.     Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

139.     Manolakos' receipt and theft of Plaintiffs' stolen funds via diversion to purchase the Middleton Property in an all cash transaction of $405,000, without any mortgage financing, for

himself, could not legally or equitably entitle Manolakos to ownership and/or title for the Middleton Property under any possible legal or equitable principle.

140.     Because Manolakos never had title to the Middleton Property, the conveyance of the Middleton Property to 9 Huntington was not valid, nor were the mortgages to RCG Funding, Realty Capital or Manolakos.

141.     Accordingly, One World and Chaleplis are entitled to a declaratory judgment that (i) the transfer of the Middleton Property to 9 Huntington and the mortgages thereon are void; and (ii) the Middleton Property is rightfully the sole title and property of One World and/or Chaleplis.

**COUNT XI**

**(Approval of Memorandum of *Lis Pendens* – All Defendants)**

142.     Plaintiffs repeat and re-allege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

143.     Upon information and belief, Manolakos could not have afforded to purchase the Middleton Property for all cash given his financial background, employment status, profession/business and annual salary, or even with conventional residential mortgage financing.

144.     Manolakos' purchase of the Middleton Property served no business purpose or benefit whatsoever to One World or Chaleplis, but rather was solely made for the pleasure, benefit and enjoyment of Manolakos using One World absconded funds that do not belong to Manolakos.

145.     Manolakos' purchase of the Middleton Property was a theft and conversion of One World's and Chaleplis' funds.

146.    Since Manolakos improperly utilized stolen One World funds to purchase the
Middleton Property in his name, title to the Middleton Property rightfully belongs to One World.

147.    Because Manolakos never had title to the Middleton Property, and the conveyance
of the Middleton Property to 9 Huntington was fraudulent, the mortgages to Manolakos, RCG
Funding and Realty Capital are void.

148.    Pursuant to M.G.L. c. 184, § 15, this action affects "title to real property or the use
and occupancy thereof."  The Court should therefore endorse and enter a memorandum of *lis
pendens* to maintain the status quo as to the Middleton Property and give notice to the public of
Plaintiffs' interest in the Middleton Property.

**WHEREFORE**, Plaintiffs One World, LLC and Gabriel Chaleplis demand judgment
against the Defendants as follows:

(a)    direct, actual and consequential damages;

(b)    compensatory damages;

(c)    punitive damages;

(d)    pre-judgment and post-judgment interest;

(e)    imposition of a constructive trust upon all the assets of Manolakos,
including but not limited to the Middleton Property, Manolakos' interests in Quick Properties,
Quick Manufacturing, 409 East Seventh LLC and 9 Huntington and all of Manolakos' bank
accounts;

(f)    a declaratory judgment that Plaintiffs are the rightful title owner of the
Middleton Property and that the transfer of the Middleton Property to 9 Huntington and the
mortgages placed thereon are void;

(g)     an accounting from Manolakos concerning all financial transactions of any kind made by Manolakos during the time period covering his misappropriation of Plaintiffs' funds diverted to Manolakos' bank accounts and misappropriated;

(h)     treble damages, attorneys' fees and costs pursuant to the RICO Statute per 18 U.S.C. 1961, et seq.;

(i)     approval, endorsement and filing of a memorandum of *lis pendens* against the Middleton Property pursuant to G.L. c. 184, § 15 to put the public on notice of this litigation that affects title to or use thereof; and

(j)     for any other relief the Court deems equitable and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

GABRIEL CHALEPLIS and ONE WORLD, LLC,

By its attorneys,

*/s/ Jessica Gray Kelly*
Jessica Gray Kelly (BBO #666846)
**SHERIN AND LODGEN LLP**
101 Federal Street
Boston, Massachusetts 02110
Tel: (617) 646-2000
jgkelly@sherin.com

**/s/ Bob Kasolas*
*Bob Kasolas (BBO# HK8850)
**BRACH EICHLER LLC**
101 Eisenhower Pkwy
Roseland, New Jersey 07069
Tel: (973) 228-5700
Fax: (973) 618-5539
bkasolas@bracheichler.com

Dated:  October 9, 2020                     [*pro hac vice admission pending*]

**<u>Verification</u>**

I, Gabriel Chaleplis, do depose and state that I am the 100% member of One World, LLC, and am authorized to sign this Verification on behalf of One World and myself, that I have read the foregoing Verified Complaint and am familiar with the contents thereof.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, except for those facts stated upon information and belief, and as to those facts I believe them to be true.  There are no material facts missing from this Verified Complaint.

Signed under the penalties of perjury this  8th   day of October, 2020.

_____
Gabriel Chaleplis