UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ONE WORLD, LLC and GABRIEL CHALEPLIS,<br><br>    Plaintiffs,<br><br>v.<br><br>IOANNIS MANOLAKOS, Individually and as Trustee of the T.J.S. Manolakos Realty Trust; QUICK MANUFACTURING CORPORATION; and QUICK PROPERTIES, LLC,<br><br>    Defendants. | No. 1:20-cv-11837-JEK |

**MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR PREJUDGMENT ATTACHMENT OR A PRELIMINARY INJUNCTION**

**KOBICK, J.**

Plaintiffs One World, LLC and Gabriel Chaleplis brought this action in October 2020 seeking to recover approximately $9 million in allegedly misappropriated funds. They claim that defendants Ioannis Manolakos, Quick Manufacturing Corporation, and Quick Properties, LLC, along with others named in separate lawsuits, acted as part of a broad conspiracy to steal those funds. Pending before this Court is the plaintiffs' July 2024 motion for prejudgment attachment or, alternatively, a preliminary injunction. For the reasons to be explained, the plaintiffs' motion will be denied. Prejudgment attachment is unwarranted because, on the record presently before the Court, significant factual disputes exist between the parties that prevent the Court from concluding that One World and Chaleplis are reasonably likely to succeed on the merits. A preliminary injunction is unwarranted for the same reason and for the plaintiffs' failure to demonstrate

irreparable harm, where monetary damages could adequately compensate the plaintiffs for any potential injuries.

## BACKGROUND

### I.     Factual Background.

The following facts are drawn from the parties' evidentiary submissions, including their exhibits and deposition transcripts, and, for context only, the amended complaint.

Chaleplis formed One World in May 2017 to pursue investment opportunities with, among others, an individual named Nikolaos Onoufriadis. ECF 75, ¶¶ 37-38. Under One World's operating agreement, Onoufriadis served as the company's sole manager and had signatory authority over its bank accounts. *Id.* ¶¶ 53, 74. Onoufriadis also held a 20% membership interest in One World, while Chaleplis held the other 80% and was "the 100% profit member." *Id.* ¶¶ 48-49, 52.

Onoufriadis was allegedly the mastermind behind a broad conspiracy involving several actors—including Manolakos, Quick Manufacturing, and Quick Properties—to misappropriate over $9 million of the plaintiffs' funds through improper wire transfers from One World. *Id.* ¶¶ 69-70, 109-10, 130-32, 165-66, 259-62. In March 2018, for example, One World wired Manolakos $70,948. ECF 209-3, at 5. Manolakos testified that this amount was partial compensation for his $118,000 loan to Conmave Monoprosopi IKE, a Greek company owned by Onoufriadis' brother. ECF 19, ¶ 11; ECF 216-3, at 8, 10 (Tr. at 117:1-8, 122:2-20); *see* ECF 209-1, 209-2.

Manolakos and Onoufriadis purportedly used the diverted funds to purchase, among other things, a condominium at 300 Pier 4 Boulevard in Boston, Massachusetts. ECF 75, ¶¶ 153-56. To buy that condominium, Manolakos agreed to loan Onoufriadis $1,552,651.61 in June 2019; this agreement was memorialized in a promissory note. ECF 209-8, 216-2. Later, in February 2021,

Onoufriadis granted Manolakos a mortgage on the property that secured Manolakos' loan. ECF 209-13. In August 2020, the plaintiffs obtained a *lis pendens* on the property. ECF 209-11, at 9. That *lis pendens* was dissolved in February 2024. *See One World, LLC v. Onoufriadis*, No. 20-cv-11580-JEK, 2024 WL 691412, at *3 (D. Mass. Feb. 20, 2024). Onoufriadis sold the condominium in July 2024. ECF 209, ¶ 37.

## II.    Procedural History.

One World and Chaleplis brought this action in October 2020. ECF 1. In August 2021, they filed an amended complaint asserting eleven claims against the defendants. ECF 75, ¶¶ 277-335. The Court dismissed four of those claims in May 2022. ECF 128. The remaining seven claims are for conversion (Count I), conspiracy to commit conversion (Count II), aiding and abetting conversion (Count III), unjust enrichment (Count IV), declaratory judgment that two of Manolakos' properties belong to the plaintiffs (Count VII), conspiracy to commit legal fraud (Count VIII), and aiding and abetting such fraud (Count IX). *Id.* at 9; ECF 75, ¶¶ 277-95, 301-11.

This case has now been pending for four years, and fact discovery is complete. In July 2024, soon after Onoufriadis sold his Boston condominium, the plaintiffs filed a motion for prejudgment attachment or, in the alternative, a preliminary injunction, which the defendants opposed. ECF 207, 215. After granting the plaintiffs' request for a continuance, the Court held a hearing on the motion on September 17, 2024. ECF 248, 253. On October 18, 2024, the parties filed competing motions for summary judgment, with oppositions due thereafter. ECF 260, 264.

## DISCUSSION

## I.    Motion for Prejudgment Attachment.

The plaintiffs first seek "prejudgment attachment against all funds allocable" to the mortgage that Onoufriadis granted to Manolakos in February 2021. ECF 208, at 18. Federal Rule

of Civil Procedure 64 "authorizes use of state prejudgment remedies." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 330 (1999). It states that, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing . . . property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). Massachusetts law, in turn, provides that "[s]ubsequent to the commencement of any action under these rules, real estate, goods and chattels and other property may . . . be attached and held to satisfy the judgment for damages and costs which the plaintiff may recover." Mass. R. Civ. P. 4.1(a). The attachment may be approved "only after notice to the defendant and hearing and upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment." Mass. R. Civ. P. 4.1(c); *see also* M.G.L. c. 223, § 42 ("All real and personal property," with some exceptions, "may be attached upon a writ of attachment in any action in which the debt or damages are recoverable, and may be held as security to satisfy such judgment as the plaintiff may recover[.]"). The plaintiff's request for prejudgment attachment must be supported by an affidavit that "set[s] forth specific facts sufficient to warrant the required findings." Mass. R. Civ. P. 4.1(h).

The "central question on the motion for approval of attachment is whether plaintiffs are likely to prevail on the merits and obtain damages in the necessary amount." *U.S. Fid. & Guar. Co. v. Arch Ins. Co.*, 578 F.3d 45, 52 (1st Cir. 2009) (quotation marks omitted). "This attachment relief is available only upon a finding of reasonable likelihood of success." *Sakab Saudi Holding Co. v. Aljabri*, 58 F.4th 585, 604 (1st Cir. 2023). The plaintiffs must therefore "demonstrate (1) a reasonable likelihood of success on the merits and (2) a reasonable likelihood of recovering

4

judgment equal to or greater than the amount of the attachment sought over and above any liability insurance shown by defendant[s] to be available to satisfy judgment." *Safeguard Props. Mgmt., LLC v. Zoll*, No. 22-cv-11004-DJC, 2022 WL 16838781, at *1 (D. Mass. Nov. 8, 2022). If successful, prejudgment attachment "authoriz[es] the seizure of the real and personal property of the defendant[s] to be held as security for any judgment the plaintiff[s] may recover in the action." *Mullane v. Chambers*, 333 F.3d 322, 329 (1st Cir. 2003).

The plaintiffs here have identified "the amount of the attachment" sought and have shown that the defendants lack "any liability insurance" to cover that amount. Mass. R. Civ. P. 4.1(c). In particular, counsel for the plaintiffs represented at the motion hearing that they seek to attach $1,552,651.61, the amount that Manolakos loaned to Onoufriadis to purchase the now-sold Boston condominium. *See* ECF 209-8. In the plaintiffs' view, because the purchase of the condominium was part of the defendants' conspiracy with Onoufriadis, the amount of the loan from Manolakos to Onoufriadis, secured by the mortgage, is subject to attachment. Defendants' counsel acknowledged at the hearing that the defendants lack liability insurance to cover that amount. *See* ECF 209, ¶ 27.

The plaintiffs have not, however, established a reasonable likelihood of success on the merits. Their surviving claims—alleging conversion, unjust enrichment, and fraud—all require evidence of wrongful conduct. *See, e.g.*, *Kelley v. LaForce*, 288 F.3d 1, 11-12 (1st Cir. 2002) ("The tort of conversion requires an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession." (citing, *inter alia*, *Third Nat. Bank of Hampden Cnty. v. Cont'l Ins. Co.*, 388 Mass. 240, 244 (1983))); *Columbia Plaza Assocs. v. Ne. Univ.*, 493 Mass. 570, 588-89 (2024) ("Unjust enrichment is the 'retention of money or property of another against the fundamental principles of justice or equity and good conscience[.]'"

5

(quoting *Sacks v. Dissinger*, 488 Mass. 780, 789 (2021))); *Balles v. Babcock Power Inc.*, 476 Mass. 565, 573 (2017) ("The elements of fraud consist of [1] a false representation [2] of a matter of material fact [3] with knowledge of its falsity [4] for the purpose of inducing [action] thereon, and [5] that the plaintiff relied upon the representation as true and acted upon it to his [or her] damage." (quotation marks omitted)). So, too, does the declaratory judgment claim seeking ownership of certain Manolakos properties, because it is premised on Manolakos' alleged role in the conspiracy. ECF 75, ¶¶ 302-03; *see Chaleplis v. Karloutsos*, 579 F. Supp. 3d 685, 706 n.3 (E.D. Pa. 2022) (explaining, in a related case brought by Chaleplis and One World, that their "request for a declaratory judgment, even if only applied to the misappropriated funds used toward the down payments on the respective homes, would still be . . . duplicative of their other requested relief").[1]

The plaintiffs' theory of the case is that Onoufriadis, as One World's manager, orchestrated a conspiracy to funnel money to himself and others, including Manolakos, through unauthorized wire transfers from One World's accounts. To support this theory, the plaintiffs must provide evidence showing, at a minimum, (1) that Onoufriadis engaged in such improper behavior, and (2) that Manolakos and the other defendants participated in the scheme. As to Onoufriadis, the plaintiffs have submitted no evidence that he lacked the authority to make the challenged wire transfers from One World or that those transfers were otherwise invalid. The plaintiffs primarily cite to the amended complaint, but "[u]nverified allegations in a complaint are not evidence." *Geshke v. Crocs, Inc.*, 740 F.3d 74, 78 n.3 (1st Cir. 2014). They further rely on exhibits in the record, such as bank statements and wire transfers, but those materials, standing alone, are not

---

[1] Onoufriadis' sale of the Boston condominium does not necessarily extinguish his loan from Manolakos. *See HSBC Bank USA, N.A. v. Morris*, 490 Mass. 322, 334 (2022) ("[T]he loan—that is, the underlying indebtedness and promise to repay—may not have ended at foreclosure even if, by virtue of the foreclosure, the mortgage instrument no longer secures that promise.").

sufficient evidence that Onoufriadis acted improperly. For example, even though One World's March 2018 bank statement was addressed to Onoufriadis' attention, it does not indicate that he initiated the $70,948 wire transfer from One World to Manolakos. ECF 209-3, at 1, 5; *see also* ECF 209-16. Instead, the plaintiffs resort to their own interpretation of the exhibits. They assert, for instance, that the June 2019 loan between Manolakos and Onoufriadis is "phony," but there is nothing on the face of the loan itself to support that contention or the contention that the loan was the product of the plaintiffs' siphoned funds. ECF 208, at 4-5; *see* ECF 216-2. Such conjecture is not evidence. *See Town of Westport v. Monsanto Co.*, 877 F.3d 58, 66 (1st Cir. 2017) ("[J]udges cannot allow conjecture to substitute for the evidence[.]" (quotation marks omitted)). The plaintiffs have also submitted a two-page excerpt from Onoufriadis' deposition transcript in a related state court action, but that testimony similarly fails to provide evidence of the alleged conspiracy. ECF 209-23; *see* ECF 208, at 7.

With respect to Manolakos, the parties dispute whether the current, albeit limited, record evidence shows that he participated in the purported scheme to defraud One World. Setting aside the allegations in the amended complaint, which again are not evidence, the plaintiffs point to One World's $70,948 wire transfer to Manolakos in March 2018 as evidence of his involvement in the alleged conspiracy. ECF 209-3, at 5. Manolakos testified, however, that he received this transfer to partially compensate him for his $118,000 loan to Conmave. ECF 19, ¶ 11; ECF 216-3, at 8, 10 (Tr. at 117:1-8, 122:2-20); *see* ECF 209-1, 209-2. The plaintiffs question why, if that were the case, he would have received the transfer from One World, rather than Conmave. Whether this money was a legitimate reimbursement, as Manolakos testified, or the product of a conspiracy against One World, as the plaintiffs contend, is thus disputed.

The plaintiffs also rely on Manolakos' deposition testimony about his loan to Onoufriadis for the Boston condominium. In their telling, his testimony "confirms the sham nature" of the mortgage in part because he did not intend to enforce its terms and never charged Onoufriadis late fees or default interest. ECF 208, at 11-12 (citing ECF 209-14). But the deposition transcript provides more context. Manolakos testified that he did not ask Onoufriadis when he could expect the loan to be repaid "[b]ecause [he] knew the condo was an asset, and that when [Onoufriadis] sold the condo, [h]e would get [his] money back." ECF 209-14, at 6 (Tr. at 154:2-8). Manolakos further testified that Onoufriadis would have sold the condominium and used the proceeds of the sale to repay Manolakos if he defaulted on the loan, because Onoufriadis was a "great" and "special" friend whom Manolakos had "helped . . . out." ECF 216-3, at 13, 15 (Tr. at 159:2-15, 191:9-13). Thus, whether the June 2019 loan, and subsequent February 2021 mortgage, were valid transactions, or rather part of the alleged conspiracy, remains another disputed issue of fact.

Courts routinely deny motions for prejudgment attachment where, as here, "significant factual disputes" exist between the parties. *Bergus v. Florian*, No. 18-cv-10323-DPW, 2019 WL 7565458, at *5 (D. Mass. Nov. 21, 2019); *see Hayes v. CRGE Foxborough, LLC*, 167 F. Supp. 3d 229, 240 (D. Mass. 2016) (collecting cases); *cf. Spencer Cos., Inc. v. Armonk Indus., Inc.*, 489 F.2d 704, 707 (1st Cir. 1973) (affirming denial of preliminary injunction where there was "a major factual dispute" and "uncertainty whether [the plaintiff] would ever prevail on the merits"). Given the contested factual issues in this case and the dearth of evidence submitted by the plaintiffs, the Court cannot conclude, at this stage in the proceedings and based on the current record, that the

8

...

plaintiffs are reasonably likely to prevail on the merits.[2] Accordingly, the plaintiffs' motion for prejudgment attachment will be denied.

## II. **Motion for a Preliminary Injunction.**

The plaintiffs alternatively seek a preliminary injunction to freeze the funds that the plaintiffs expect will be used to pay off Manolakos' mortgage. "'A preliminary injunction is an extraordinary and drastic remedy . . . that is never awarded as of right.'" *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011) (quotation marks omitted). To secure a preliminary injunction, the plaintiffs bear the burden to demonstrate: "'(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest.'" *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020) (quoting *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003)). The first and second factors are "the most important." *Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 79 (1st Cir. 2009).[3]

The plaintiffs have not demonstrated an entitlement to preliminary injunctive relief. They have not, as discussed, demonstrated a likelihood of success on the merits of their claims because, among other reasons, significant factual disputes remain between the parties. In addition, the plaintiffs have not demonstrated that they would suffer irreparable harm without an injunction,

---

[2] In a related action, the Massachusetts Superior Court recently denied a materially similar motion for a preliminary injunction or trustee process attachment because One World and Chaleplis did not demonstrate "a reasonable likelihood that they will succeed on the merits" in light of the "highly contested" facts. ECF 216-1, at 2.

[3] Where, as here, the plaintiffs seek both legal and equitable relief with a sufficient nexus to the defendants' assets, an injunction freezing those assets would be within the scope of the Court's authority. *See, e.g.*, *Iantosca v. Step Plan Servs.*, 604 F.3d 24, 33-34 (1st Cir. 2010); *Faville v. Munro*, No. 22-cv-11911-DJC, 2022 WL 17363511, at *3-4 (D. Mass. Dec. 1, 2022).

which is, in most cases, "'a necessary threshold showing for an award of preliminary injunctive relief.'" *Gonzalez-Droz*, 573 F.3d at 79 (quoting *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004)). "The general rule . . . is that 'traditional economic damages can be remedied by compensatory awards,'" and thus do not constitute irreparable harm. *NACM-New England, Inc. v. Nat'l Ass'n of Credit Mgmt., Inc.*, 927 F.3d 1, 5 (1st Cir. 2019) (quoting *Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009)). One World and Chaleplis principally seek to recover millions of dollars from the defendants, who were allegedly involved in a broad conspiracy to siphon their funds. *See* ECF 75, at 58; ECF 128, at 1-4. Pointing to their declaratory judgment claim, however, the plaintiffs contend that they seek equitable relief as well as monetary damages. But because the requested declaration is duplicative of the plaintiffs' claims for damages, the plaintiffs' alleged injuries are "adequately compensable by money damages." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996); *see Chaleplis*, 579 F. Supp. 3d at 706 n.3 ("As Plaintiffs already seek money damages pursuant to their remaining claims, a declaratory judgment entitling them to any funds used to purchase Defendants' homes would be 'redundant with claims already presented.'" (citation omitted)). Nor have the plaintiffs presented evidence that their "'potential economic loss is so great as to threaten the existence of [their] business.'" *NACM-New England*, 927 F.3d at 5 (quoting *Irizarry*, 587 F.3d at 485). Where, as here, "an award of pecuniary damages" would make the plaintiffs whole, their "legal remedy is adequate" and a preliminary injunction is inappropriate. *Charlesbank*, 370 F.3d at 162.[4]

---

[4] In the related action, *see supra* note 2, the Massachusetts Superior Court likewise concluded recently that One World and Chaleplis are not entitled to a preliminary injunction in part because the injunction they sought was "simply in the nature of encumbering money, which is not the type of injury that constitutes irreparable harm." ECF 216-1, at 3-4.

The plaintiffs contend, nonetheless, that they will suffer irreparable harm absent injunctive relief because there is, in their view, "'a strong indication that the defendant[s] may dissipate or conceal assets.'" *Pineda v. Skinner Servs., Inc.*, 22 F.4th 47, 56 (1st Cir. 2021) (quoting *Micro Signal Rsch., Inc. v. Otus*, 417 F.3d 28, 31 (1st Cir. 2005)). But the plaintiffs do not point to any concrete evidence to support that accusation. *See* ECF 208, at 19. And to establish irreparable harm, they must rely "on something more than conjecture, surmise, or [their] unsubstantiated fears of what the future may have in store." *Charlesbank*, 370 F.3d at 162; *see Warwick, Inc.*, 102 F.3d at 19 ("[A] preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm."). The plaintiffs' speculation that the defendants will abscond with their allegedly misappropriated funds is insufficient to conclude that they will suffer irreparable injury. The plaintiffs have not, accordingly, demonstrated an entitlement to preliminary injunctive relief.

## CONCLUSION AND ORDER

For the foregoing reasons, the plaintiffs' motion for prejudgment attachment under Federal Rule of Civil Procedure 64 or, alternatively, a preliminary injunction pursuant to Rule 65, ECF 207, is DENIED. The defendants' request for attorneys' fees in connection with the motion is also DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: October 24, 2024                    UNITED STATES DISTRICT JUDGE