# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ONE WORLD, LLC and GABRIEL CHALEPLIS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:20-cv-11837-JEK |
| IOANNIS MANOLAKOS, Individually and as Trustee of the T.J.S. Manolakos Realty Trust; QUICK MANUFACTURING CORPORATION; and QUICK PROPERTIES, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION TO SUPPLEMENT

**KOBICK, J.**

Plaintiffs One World, LLC and Gabriel Chaleplis filed this action over four years ago to recover allegedly misappropriated funds. They claim that defendants Ioannis Manolakos, Quick Manufacturing Corporation, and Quick Properties, LLC, along with others named in separate lawsuits, committed conversion and acted as part of a broad conspiracy to steal approximately $9 million. Pending before this Court are the parties' cross-motions for summary judgment and the plaintiffs' motion to supplement the summary judgment record. For the reasons that follow, the plaintiffs' summary judgment motion will be denied, the defendants' summary judgment motion will be granted in part and denied in part, and the plaintiffs' motion to supplement will be granted.

Chaleplis lacks standing to assert claims individually on behalf of One World because the allegedly diverted funds came entirely from One World, which is a distinct legal entity with the

right to sue separate from Chaleplis' rights as its member. Quick Manufacturing and Quick Properties are entitled to summary judgment on all claims. Genuine issues of material fact preclude summary judgment on One World's claims against Manolakos for conversion, conspiracy to commit conversion, and aiding and abetting conversion based only on his receipt of $70,948 from One World as final payment on his loan to another entity. No reasonable jury could find in One World's favor, however, on its other theories underlying these claims or on its separate claims for conspiracy to commit and aiding and abetting of legal fraud. The unjust enrichment claim falters in part because it is premised on the same conduct as the surviving conversion claim, which provides an adequate remedy at law. And the declaratory judgment claim falls short partially because it is duplicative of one of One World's rejected conversion claim theories regarding the mortgage on a Boston condominium that Nikolaos Onoufriadis granted to Manolakos.

## BACKGROUND

### I.    Factual Background.

The following facts are either undisputed or recounted in the light most favorable to the non-moving party, where supported by record evidence. *See Roberge v. Travelers Prop. Cas. Co. of Am.*, 112 F.4th 45, 51 (1st Cir. 2024) ("This lens . . . do[es] not change where the parties file cross-motions for summary judgment[.]").

### A.    The Plaintiffs.

Chaleplis, a citizen of the United Kingdom, formed One World, a Delaware limited liability company, in May 2017 to pursue investment opportunities in the United States. ECF 266, ¶¶ 1-2, 11. He and an individual named Nikolaos ("Nick") Onoufriadis executed an operating agreement for One World in September 2017. *Id.* ¶ 12. Under that agreement, Chaleplis held an 80% membership interest in One World and Onoufriadis held the other 20%. *Id.* ¶ 13. The agreement

provided for Onoufriadis to manage One World's "business and affairs." *Id.* ¶ 14. As manager, Onoufriadis had signatory authority over One World's bank accounts. *Id.* ¶ 15. The agreement also appointed James Rodgers, Esq. as One World's Corporate Secretary and Chief Legal Counsel. *Id.* ¶ 16.

Chaleplis effectively owns 99% of a Maltese company named B2B Gaming Services Malta Ltd. *Id.* ¶¶ 9-10; ECF 271, ¶ 17. B2B Gaming supplied nearly all of the funds for One World to invest. ECF 266, ¶ 17. It wired €16.78 million to Rodgers for One World between March 2018 and December 2018 and €2.5 million to One World directly in June 2019. *Id.* ¶¶ 25-27; ECF 266-7. Chaleplis testified that B2B Gaming wired those funds as compensation for consulting fees that it owed him, but he did not produce any consultant agreement between him and B2B Gaming. ECF 271, ¶¶ 18-19.

One World and B2B Gaming also entered into two loan agreements. ECF 266, ¶ 20. On February 13, 2018, B2B's Chief Financial Officer, Paul Milburn, emailed Chaleplis two draft loan documents between One World and B2B Gaming. *Id.* ¶ 21; ECF 266-8, at 2. The first is a promissory demand note, in which B2B Gaming promised to pay One World up to €10 million, that was purportedly "EXECUTED: FEBRUARY 16, 2017"—nearly a year before Milburn's email. ECF 266-8, at 4-10. The second is an €8.5 million loan from One World to B2B Gaming that is similarly dated February 16, 2017. *Id.* at 11-14. Milburn stated in the email that he preferred the second agreement that "borrowed the funds for purchase of [a] Greek permanent license when it becomes available with the possibility of conversion to equity," and he asked that Chaleplis review both and "get it signed and repaid as [he] would prefer this to be done prior to the audit." ECF 266, ¶ 21. That same day, Chaleplis forwarded the materials to Onoufriadis to review and sign. ECF 266-8, at 2. Onoufriadis responded two days later and attached "the executed

documents," although he signed only the loan agreement. *Id.* at 2, 14. Chaleplis had not signed either document on behalf of B2B Gaming. *Id.* at 10, 14.

      B.    <u>The Defendants and the Conmave Loan.</u>

Manolakos is a resident of Middleton, Massachusetts who owns Quick Manufacturing and is the sole member of Quick Properties. ECF 266, ¶¶ 3, 5, 7. Both entities have a principal place of business at 4 Electronics Avenue in Danvers, Massachusetts. *Id.* ¶¶ 4, 6. Quick Properties owns that Danvers property. *Id.* ¶ 8; ECF 276, ¶¶ 9-10. Manolakos is the sole trustee of T.J.S. Manolakos Realty Trust, which owns the interest in Quick Properties. ECF 266, ¶ 8; ECF 276, ¶ 11. He also owns two residential properties in Greece that he inherited from his father. ECF 266, ¶ 29. In 2017, he wired money to Greece multiple times to compensate contractors working on those properties. *Id.* ¶ 31; ECF 276, ¶ 17. Manolakos does not have any business interests in Greece or any ownership interest in Greek companies. ECF 266, ¶ 28. He did, however, list 48 Vouliagmenis Avenue, Voula, Attica, Greece 16673 as an address for Quick Manufacturing on its website. *Id.* ¶ 38; ECF 271, ¶ 28. Manolakos testified that he did so for marketing purposes and to demonstrate his Greek pride. ECF 266, ¶ 38.

Manolakos met Onoufriadis in 2016, and they became good friends. *Id.* ¶ 33. Onoufriadis baptized Manolakos' child, Manolakos attended Onoufriadis' wedding, and they have vacationed together with their partners. ECF 276, ¶¶ 20, 22-24. In a February 26, 2018 text to Rodgers, Onoufriadis described Manolakos as "one of [his] closest friends in Massachusetts." ECF 263-9, at 3. Onoufriadis and Manolakos have also engaged in joint business ventures such as IMNO Hospitality Investments LLC, which they established for Manolakos' investment in restaurants. ECF 276, ¶¶ 21, 26, 31.

4

In December 2017, Onoufriadis asked Manolakos to loan money to a Greek company, Conmave Monoprosopi IKE, to purchase a high-end vehicle. ECF 266, ¶ 34. Conmave buys and sells vehicles and machinery. *Id.* ¶ 36. It is owned by Onoufriadis' brother, Theophilos Onoufriadis, and is located at the same Greek address that Quick Manufacturing advertised. *Id.* ¶¶ 36, 38; ECF 271, ¶¶ 28, 36, 38; ECF 276, ¶ 38. That same month, Manolakos agreed to loan Conmave €100,000, or approximately $118,000. ECF 266, ¶ 39. Specifically, on December 5, 2017, Manolakos executed a promissory note, agreeing to lend Conmave €100,000 in exchange for payment of that principal plus 20% interest within six months. *Id.* ¶ 40.[1] Two days later, he wired $118,000 to Rodgers' Interest on Lawyers' Trust Accounts ("IOLTA") account. *Id.* ¶¶ 39, 42. Nick Onoufriadis had instructed him to do so on November 29, 2017 to guarantee "100% safety and no issues with the international wires." *Id.* ¶ 41; ECF 266-10. Rodgers subsequently wired those funds to Conmave's Greek bank account. ECF 276, ¶ 56.

Manolakos was paid back in three separate transactions. ECF 266, ¶ 43. On February 26, 2018, Conmave wired €50,000 (or $58,895.97) to Rodgers' IOLTA account, and Rodgers in turn transferred that amount to Manolakos' account. ECF 276, ¶¶ 58-59. Similarly, on March 2, 2018, Conmave wired €10,000 (or $11,757) to Rodgers' IOLTA account, and Rodgers then transferred that amount to Manolakos' account. *Id.* ¶¶ 60-61. Unlike the first two payments—which came from Conmave via Rodgers—Manolakos received the third payment of $70,948 from *One World*

---

[1] The plaintiffs dispute the authenticity of this note because Manolakos did not produce the original version or know where it was, who possessed it, or how he received it. ECF 271, ¶ 40. These concerns do not raise "a genuine question . . . about the original's authenticity." Fed. R. Evid. 1003. This is because Manolakos averred that the note was a "true and accurate copy of the Conmave Promissory Note," ECF 266-1, ¶ 19, and testified to the same, ECF 266-4, at 91:22-92:17. *See United States v. Mulinelli-Navas*, 111 F.3d 983, 989-90 (1st Cir. 1997) (affirming admission of duplicate over Rule 1003 authenticity objection where defendant "failed to elicit any testimony or make any proffer suggesting that the original had been tampered with or altered in any way and that the copy was not what it purported to be").

on March 9, 2018. ECF 266, ¶¶ 44-46; ECF 266-1, ¶ 24. Onoufriadis initiated this final payment by emailing Rodgers that same day to wire $70,948 to Manolakos. ECF 266, ¶ 47; ECF 266-15. On December 21, 2018, Onoufriadis emailed One World's financial statement to Chaleplis detailing the company's transactions, including that "$70,948 were wired to Ioannis T. Manolakos for a business transaction" in March 2018. ECF 266-16, at 2-3.

      C.    <u>The Loans Between One World and Conmave.</u>

On June 4, 2018, One World and Conmave finalized a promissory demand note, whereby One World agreed to lend Conmave €4 million in exchange for payment of that principal plus 4% annual interest within twenty-four months. ECF 276, ¶¶ 87, 90; ECF 263-11, at 2-7, 32. The note was dated May 18, 2018—two weeks earlier—and signed by Onoufriadis on behalf of One World and Grigorios Chatziantoniadis on behalf of Conmave. ECF 263-11, at 2-7. On May 30, 2018, Onoufriadis emailed Rodgers and copied Chaleplis to explain that "this is not a real loan, but one that will help [Chaleplis] bring some money back for an investment in Greece," and that they "want to make sure that [his] brother's company [Conmave], who appears as the borrower, is not stuck with any strict requirements." *Id.* at 14; ECF 276, ¶ 89. Over three wires, one on May 22, 2018 and the other two on June 18, 2018, Onoufriadis transferred €4 million from One World to Conmave. ECF 276, ¶ 91.

Likewise, on October 8, 2018, One World and Conmave executed another promissory demand note, wherein One World agreed to lend Conmave another €3.25 million in exchange for payment of that principal plus 4% annual interest within twenty-four months. *Id.* ¶ 94; ECF 263-12, at 2-7. The note was again signed by Onoufriadis on One World's behalf and Chatziantoniadis on Conmave's behalf. ECF 263-12, at 7. On October 17, 2018, Onoufriadis wired €3.25 million from One World to Conmave. ECF 276, ¶ 95.

On April 20, 2019, Onoufriadis emailed Chaleplis stating: "I have been trying to make sure that the promissory notes will be appropriately and fully returned back to One World from all the receivers. From the way things are going, I am expecting a result closer to/by the end of May. I will be keeping you posted for any developments that may occur in the meantime." *Id.* ¶ 115. In that same email thread from May 3 through May 17, 2019, Chaleplis repeatedly requested updates from Onoufriadis about the two Conmave promissory notes. *Id.* ¶ 116. While Onoufriadis sought to return the funds transferred to Conmave by the end of May 2019, he did not do so. *Id.* ¶ 117. On July 19, 2023, One World obtained a $9,837,328.89 default judgment in a related action in Suffolk Superior Court against Conmave for failure to pay its two promissory notes. *Id.* ¶¶ 223-24; ECF 263-32.

D.     Onoufriadis' Boston Condominium.

On May 23, 2018, Onoufriadis entered into a contract to purchase a yet-to-be constructed condominium at 300 Pier 4 Boulevard in Boston, Massachusetts for $1,923,000. ECF 276, ¶ 120; ECF 263-15. To pay the initial 10% deposit of $192,300, Onoufriadis wired that amount from One World to his personal bank account the day before. ECF 276, ¶¶ 121-22. Onoufriadis wired $300,000 from One World to his personal account again on November 15, 2018 to pay another $192,300 for his Boston condominium. *Id.* ¶ 123.

In May 2019, when the Boston condominium was substantially complete, Onoufriadis was soon to be on the hook for the approximately $1.5 million balance. ECF 276, ¶¶ 129, 147. To help Onoufriadis with financing, Manolakos had Quick Manufacturing obtain a $1 million commercial and industrial bank loan with a six-month term and 5.5% interest rate, which Manolakos personally guaranteed. *Id.* ¶¶ 131, 135, 137. On June 11, 2019, this loan closed, and the funds were deposited into Manolakos' account. *Id.* ¶ 138. Six days later, Manolakos executed a promissory note,

agreeing to lend Onoufriadis $1,552,651.61 in exchange for—as with the bank loan—payment of $1 million plus 5.5% interest within six months. *Id.* ¶¶ 141-42; ECF 263-20. The note is silent on the remaining $552,651.61, and Manolakos never charged interest on that amount. ECF 263-20; ECF 276, ¶¶ 143-44. Before executing this note, Manolakos did not conduct any financial due diligence to assess Onoufriadis' ability to repay, but he testified that he would get his money back when Onoufriadis resold the condominium. ECF 276, ¶¶ 149-55, 160-61. Manolakos transferred $1,552,651 from his account to the IOLTA account of Onoufriadis' closing attorney on June 19, 2019. *Id.* ¶ 146. The sale closed for the Boston condominium two days later. *Id.* ¶ 148.

Between June and November 2019, Onoufriadis made interest payments on the loan in part by writing checks from the account of his company, Power 2u Consulting LLC, to Manolakos. *Id.* ¶¶ 169, 174-78. Onoufriadis failed to repay the loan within six months, but Manolakos did not default him. *Id.* ¶¶ 179, 211. Manolakos subsequently applied for a loan with North Shore Bank on November 26, 2019 to borrow $1 million in the name of Quick Manufacturing, Quick Properties, and his Realty Trust. *Id.* ¶ 180. The Bank issued a commitment letter on December 30, 2019 to loan Manolakos the requested $1 million over a twenty-two-year term with a starting annual but adjustable 4.75% interest rate to be used for a "business investment." *Id.* ¶¶ 182-84. This loan was effectuated through a loan agreement and promissory note, both dated January 31, 2020. *Id.* ¶ 186; ECF 263-23, at 8-66. Manolakos secured the loan through a personal guaranty as well as a mortgage and collateral assignment of leases and rents against the property in Danvers, Massachusetts, where Quick Manufacturing and Quick Properties are principally based. ECF 276, ¶¶ 187-88.

On February 1, 2020, Manolakos paid off the earlier $1 million commercial and industrial bank loan. *Id.* ¶ 194; ECF 263-24. Onoufriadis issued additional checks from Power 2u's account

to pay Manolakos in January, February, April, May, June, September, and November 2020. ECF 276, ¶¶ 190, 192, 195, 197, 200-04, 206-07. On June 25, 2020, Manolakos wrote Onoufriadis a $35,000 check but could not recall why he did so. *Id.* ¶ 216; ECF 263-26.

On September 2, 2020, in a separate action, this Court granted the plaintiffs a *lis pendens* on the Boston condominium, which was recorded the following day. ECF 276, ¶ 220; ECF 263-35, at 9-10.[2] Onoufriadis granted Manolakos a mortgage on the Boston condominium on February 26, 2021, twenty months after they had executed the June 2019 promissory note. ECF 276, ¶ 218; ECF 263-31; *see* ECF 263-20. That mortgage was recorded in March 2021. ECF 276, ¶ 219. Onoufriadis continued to make payments to Manolakos on the Boston condominium loan through July 2023. ECF 276, ¶ 209; ECF 263-39. Even though Onoufriadis did not make any further payments in 2023 or 2024, Manolakos never mentioned arrears to him or charged him late fees. ECF 276, ¶¶ 213-14, 217. Onoufriadis sold the condominium in July 2024. ECF 209, ¶ 37.

## II.    **Procedural History.**

Invoking this Court's diversity jurisdiction, One World and Chaleplis initiated this action in October 2020. ECF 1. In August 2021, they filed an amended complaint asserting eleven claims against the defendants. ECF 75, ¶¶ 277-335. The Court dismissed four of those claims in May 2022. ECF 128. The surviving seven claims are for conversion (Count I), conspiracy to commit conversion (Count II), aiding and abetting conversion (Count III), unjust enrichment (Count IV), declaratory judgment that two of Manolakos' properties belong to the plaintiffs (Count VII),

---

[2] The Court dissolved that *lis pendens* in February 2024. *See One World, LLC v. Onoufriadis*, No. 20-cv-11580-JEK, 2024 WL 691412, at *3 (D. Mass. Feb. 20, 2024).

conspiracy to commit legal fraud (Count VIII), and aiding and abetting such fraud (Count IX). *Id.* at 9; ECF 75, ¶¶ 277-95, 301-11.

In July 2024, following discovery, the plaintiffs filed a motion for prejudgment attachment or, in the alternative, a preliminary injunction. ECF 207. The Court denied that motion in October 2024. ECF 268. That same month, the parties filed competing motions for summary judgment. ECF 260, 264. The parties opposed those motions and the plaintiffs filed their reply in November 2024. ECF 270, 274, 283. After twice granting motions to continue the hearing on the parties' cross-motions for summary judgment, the Court held a hearing and took the motions under advisement in July 2025. ECF 286, 290, 291. The plaintiffs moved to supplement the summary judgment record in August 2025 with newly discovered evidence. ECF 298. After being granted an extension, the defendants failed to timely oppose that motion. ECF 303, 304.

## STANDARD OF REVIEW

Summary judgment is appropriate when, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). To prevail, the moving party must show that "there is no factual determination which a rational factfinder could make as to the existence or nonexistence of a fact that has the potential to change the outcome of the suit." *Gibson Found., Inc. v. Norris*, 88 F.4th 1, 5 (1st Cir. 2023) (quotation marks omitted). Courts "must consider the record and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant," but "need not credit 'conclusory allegations, improbable inferences, and unsupported speculation.'" *Dixon-Tribou v.*

*McDonough*, 86 F.4th 453, 458 (1st Cir. 2023) (quoting *Lahens v. AT&T Mobility Puerto Rico, Inc.*, 28 F.4th 325, 333 (1st Cir. 2022)). Where, as here, the parties have filed cross-motions for summary judgment, courts "review each motion separately, drawing facts and inferences in favor of the non-moving party." *Roberge*, 112 F.4th at 51 (quotation marks omitted).

## DISCUSSION

The parties seek summary judgment on the plaintiffs' surviving claims, each of which arises under state law. Where, as here, subject matter jurisdiction is premised on diversity of citizenship, "state law supplies the substantive rules of decision." *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023); *see* ECF 75, ¶ 1; ECF 243. If the parties agree on the state law that applies, the Court "is free to forego an independent [choice-of-law] analysis and accept the parties' agreement." *Patton v. Johnson*, 915 F.3d 827, 836 (1st Cir. 2019) (quotation marks omitted). At the hearing on the cross-motions for summary judgment, counsel for both parties agreed that Massachusetts law applies to the plaintiffs' claims. Because the parties' agreement is reasonable under the circumstances, the Court will accept their choice of law without conducting an independent choice-of-law analysis.

## I.    __Chaleplis' Standing.__

Before addressing the merits of the plaintiffs' claims, the defendants first challenge Chaleplis' standing to assert those claims. In the defendants' view, the injuries alleged pertain only to One World's diverted funds, not any of Chaleplis' own funds, and Chaleplis has neither suffered any personal injury to sustain the claims nor brought this case as a derivative suit.

"Article III of the Constitution limits 'the judicial Power' to 'Cases' and 'Controversies.'" *Wiener v. MIB Grp., Inc.*, 86 F.4th 76, 84 (1st Cir. 2023) (quoting U.S. Const. art. III, § 2, cl. 1). "An actual case or controversy exists when the party seeking to invoke the court's jurisdiction . . .

has a 'personal stake in the outcome' of the claim asserted." *Pagán v. Calderón*, 448 F.3d 16, 27 (1st Cir. 2006) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). "To satisfy the personal stake requirement, the plaintiff must pass a tripartite test." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The plaintiff "'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Conservation L. Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 86 (1st Cir. 2025) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Shareholders of a corporation lack Article III standing to enforce the rights of the corporation or redress the corporation's injuries in their individual capacities, even when the corporation has only one shareholder. *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 42 (1st Cir. 2005). Likewise, a member of a limited liability company ("LLC") "cannot bring an action in his own name to enforce the rights or redress the injuries of the LLC." *Laverty v. Massad*, 661 F. Supp. 2d 55, 62 (D. Mass. 2009). This same rule applies under Massachusetts law, which governs the parties' substantive claims, and Delaware law, which governs disputes arising out of One World's operating agreement. *See* ECF 266-5, at 8, 28, §§ 1.2, 14.1; *Dickey v. Inspectional Servs. Dept. of Boston*, 482 Mass. 1003, 1004 (2019); *Clifford Paper, Inc. v. WPP Invs., LLC*, No. 2020-cv-448-JRS, 2021 WL 2211694, at *12 (Del. Ch. June 1, 2021). Unless a member of an LLC brings a properly filed derivative action,[3] the ownership interest of that member in the LLC "does not give him standing to raise the claims of the [LLC] . . . in his individual capacity," because "[t]o hold otherwise would be to vitiate the principl[e] that . . . limited liability companies are entities that exist separate and distinct from the individuals who own them." *Dickey*, 482 Mass. at 1004.

---

[3] Derivative suits by members of LLCs are authorized under Massachusetts law and Delaware law. *See* M.G.L. c. 156C, § 56; 6 Del. Code §§ 18-1001, 18-1002.

Applying these principles here, Chaleplis lacks standing to assert direct claims on behalf of One World, LLC in his individual capacity. It is undisputed that he provided some of One World's funding and that he owns 99% of B2B Gaming, another investor in One World. ECF 266, ¶ 17; ECF 271, ¶ 17; ECF 266-3, at 81:18-24. But the fact that Chaleplis personally invested money in One World and B2B Gaming is beside the point, because the approximately $9 million in allegedly misappropriated funds at issue in this case came entirely from One World, as did the $70,948 that was transferred to Manolakos' account. ECF 271, ¶¶ 43, 46, 71-72. As an LLC, One World is a "separate and distinct" legal entity "with the rights to sue and be sued separate and apart from" from Chaleplis, as one of its members. *Dickey*, 482 Mass. at 1004. One World, not Chaleplis individually, was allegedly harmed by the defendants' actions. Chaleplis does not, therefore, have standing in this case because he "is seeking to assert claims on behalf of" One World. *Laverty*, 661 F. Supp. 2d at 62; *see SonicSolutions Algae Control, LLC v. Diversified Power Int'l, LLC*, 722 F. Supp. 3d 16, 39 (D. Mass. 2024) ("[W]hen an LLC suffers injury, the 'proper entities to complain are the LLCs that directly suffered harm, not its member-owners, who only indirectly suffered harm.'" (quoting *Taylor v. Moskow*, No. 13-cv-12675-FDS, 2014 WL 2573990, at *4 (D. Mass. June 6, 2014))). Accordingly, judgment will enter for the defendants on all of Chaleplis' claims.

## II.    <u>Conversion.</u>

Turning to the claims at issue, One World first asserts a claim of conversion against the defendants. "To be liable for conversion, a defendant must wrongfully 'exercise dominion or control over the personal property [or money] of' the plaintiff." *Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 87 (2014) (quoting *Third Nat. Bank of Hampden Cnty. v. Cont'l Ins. Co.*, 388 Mass. 240, 244 (1983)). "The elements of conversion may be established by a showing that one person exercised dominion over the personal property of another, without right, and thereby deprived the

rightful owner of its use and enjoyment." *In re Hilson*, 448 Mass. 603, 611 (2007). "Money can be the subject of conversion," and "[t]here is no requirement that the one converting property be shown to have had the intent to deprive permanently the rightful owner of its use and enjoyment, as in stealing." *Id.*

One World alleges that the defendants improperly converted its property when (1) Manolakos loaned $1,552,641.61 to Onoufriadis for the Boston condominium, (2) Manolakos received a mortgage from Onoufriadis to secure the loan on that condominium, and (3) Manolakos received $70,948 from One World as part of his repayment for his loan to Conmave. As to the first theory, no reasonable juror could conclude from the record evidence that the defendants are liable to One World for conversion based on Manolakos' $1.5 million loan to Onoufriadis for the Boston condominium. One World admits that Manolakos obtained a $1 million bank loan to fund the purchase of that condominium. ECF 266, ¶ 64; ECF 271, ¶ 64. Manolakos averred that "Quick Manuf[acturing] secured a mortgage in order to make the loan to Nikolas Onoufriadis," and, notably, that "[n]one of the funds loaned to Nikolas Onoufriadis came from One World and/or Gabriel Chaleplis." ECF 266-1, ¶ 29.

Despite this uncontroverted testimony, One World relies on what it describes as "circumstantial evidence" to support its theory that the defendants "received [its] stolen money from [Onoufriadis] for the purchase and carry of the Condo." ECF 270, at 9. But Quick Manufacturing's bank loan belies One World's speculation that the defendants used siphoned funds from One World to help Onoufriadis purchase the Boston condominium. Moreover, Onoufriadis' payments on Manolakos' loan came from Power 2u, not One World. One World suggests that certain international wires that Onoufriadis received from unidentified or suspect sources must have come from its accounts. *Id.* at 10. But such "unsupported speculation" need not

be credited and is insufficient to defeat summary judgment. *Dixon-Tribou*, 86 F.4th at 458 (quotation marks omitted).[4] Onoufriadis is not, of course, a defendant in this action. One World has not demonstrated a dispute of material fact over whether *the defendants* "wrongly exercise[d] dominion or control over the money of" One World when Quick Manufacturing secured a bank loan for the Boston condominium and Onoufriadis made payments to Manolakos for that condominium. *Weiler*, 469 Mass. at 87. The conversion claim, therefore, fails with respect to Manolakos' loan to Onoufriadis for the condominium.

Nor could any reasonable factfinder determine that the defendants are liable to One World for conversion based on the February 2021 mortgage on the Boston condominium. In One World's view, this mortgage for $1,552,651.61 is a "sham" because it was recorded months after the September 2020 *lis pendens*; the June 2019 promissory note between Manolakos and Onoufriadis did not mention such a mortgage; and Onoufriadis failed to receive additional consideration for granting the mortgage. ECF 276, ¶¶ 220-22; ECF 261, at 13-14. Nothing in the record, however, indicates that the mortgage itself was the product of One World's allegedly diverted funds. It

---

[4] The plaintiffs' motion to supplement the summary judgment record is granted because the defendants did not timely oppose it. After the Court granted an extension until September 15, 2025 to oppose the motion and warned that "no further extensions will be granted," the defendants filed their opposition on September 16, 2025, one day past the deadline. ECF 303; *see* ECF 304. The Court has reviewed this supplemental evidence, which was attached to an attorney affidavit. *See* ECF 300 & Exs. A through J. The plaintiffs assert that this evidence, which they "only recently obtained," including Conmave's records from Piraeus Bank, provides "additional direct and circumstantial evidence of [Onoufriadis'] conspiracy with Manolakos to repatriate [One World's] funds stolen through Conmave . . . and to launder them through the Boston Condo transaction" and two bank loans. ECF 298, at 1-3. As the motion acknowledges, however, none of the wires contained in those bank records are tied to any of the defendants. *See id.* at 2. These wires instead reveal transfers from Conmave to Onoufriadis, his mother and attorney, Chatziantoniadis, and others. ECF 300, ¶ 6. The wires do not, as the plaintiffs claim, "'connect the dots'" between One World's allegedly misappropriated funds and the defendants in this action. ECF 299, at 2. Nor can the plaintiffs rely on speculation to make those connections at the summary judgment stage. *See Dixon-Tribou*, 86 F.4th at 458; ECF 298, at 2 ("Plaintiffs believe . . . ."); ECF 300, ¶ 6(vi) ("it appears . . . .").

merely memorialized Manolakos and Onoufriadis' earlier promissory note. Nor does the record support that One World is otherwise entitled to that property. *See Governo L. Firm LLC v. Bergeron*, 487 Mass. 188, 198 n.20 (2021) ("conversion requires finding plaintiff owns res" (citing *In re Hilson*, 448 Mass. at 611)). It is true that, as Manolakos' lawyer, Marc Frey, explained in an email before executing the mortgage, "the Lis Pendens would have priority over the mortgage if the plaintiffs win their suit and the mortgage may turn out to be worthless." ECF 263-31, at 9. But the Court dissolved that *lis pendens* in February 2024 in a separate action. *See One World, LLC v. Onoufriadis*, No. 20-cv-11580-JEK, 2024 WL 691412, at *3 (D. Mass. Feb. 20, 2024). The plaintiffs "cannot successfully oppose a motion for summary judgment by resting" upon "mere allegations" describing a mortgage as a "sham," because such allegations "are not entitled to weight in the summary judgment calculus." *Quintana-Dieppa v. Dep't of Army*, 130 F.4th 1, 10 (1st Cir. 2025) (quotation marks omitted). No conversion claim, accordingly, lies as to the mortgage on the Boston condominium.

A reasonable jury could conclude, on the other hand, that Manolakos—but not Quick Manufacturing or Quick Properties—is liable to One World for conversion based on his receipt of $70,948 from One World as final payment on his loan to Conmave. The December 5, 2017 promissory note for €100,000 provided that Conmave, as the "'Borrower[,]' promise[d] to pay" Manolakos, and that the "Borrower shall pay in installments of principal and interest." ECF 266-9 (bold text and capital letters omitted). Despite the loans executed between One World and Conmave, and Rodgers' apparent participation in both companies, Conmave and One World are different entities. *Cf. Scott v. NG U.S. 1, Inc.*, 450 Mass. 760, 766 (2008) ("[C]orporations . . . ordinarily are regarded as separate and distinct entities."). Manolakos received two payments on the loan from Conmave—one for $58,895.97 on February 26, 2018, and another for $11,757 on

March 2, 2018. ECF 276, ¶¶ 58-61. But a third payment, for $70,948 on March 9, 2018, came from One World. ECF 266, ¶¶ 44-47.

It is undisputed that "Manolakos did not question the $70,948 payment's source and never returned it, despite his account statement detailing that the $70,948 payment was from One World." ECF 276, ¶ 63. Manolakos nevertheless contends that his receipt of $70,948 from One World cannot amount to conversion because Onoufriadis, as One World's manager, had signatory authority over its bank accounts, ECF 266, ¶ 15; ECF 271, ¶ 15, and $70,948 was the exact amount that Conmave owed to Manolakos, ECF 266-1, ¶ 26. But the scope of Onoufriadis' authority as One World's manager is disputed: Chaleplis testified that Onoufriadis "was not authorized to" transfer funds from One World to Manolakos, and Chaleplis, the other member of One World, was unaware of the transfer. ECF 266-3, at 135:16-20. Onoufriadis also had a fiduciary duty to One World to conduct its business "in a prudent and businesslike manner." ECF 263-34, at 11, § 3.5.

Manolakos further relies on his declaration averring that he was told by Onoufriadis that Onoufriadis' brother, Theophilos, who owns Conmave, "had given cash to Gabriel Chaleplis in order to make the final payment" on the loan. ECF 266-1, ¶ 26. At his deposition, however, Chaleplis testified that he did not know whether Theophilos ever paid him $70,948 in cash as reimbursement. ECF 266-3, at 168:12-22.[5] Chaleplis also testified at his deposition that $70,948 is identified as a loan on One World's 2018 tax return, and that he could not recall if that return had ever been amended. ECF 266-3, at 256:6-9, 259:5-15.

In light of this conflicting evidence, genuine disputes of material fact preclude summary judgment on this aspect of the conversion claim against Manolakos. Whether Onoufriadis properly

---

[5] By contrast, Chaleplis reportedly testified at his deposition in a related Massachusetts Superior Court action that this cash *did* include reimbursement for One World's $70,948 payment to Manolakos. ECF 274, at 8 (quoting ECF 275-1, at 15:13-16, 22:1-25:2).

wired $70,948 to Manolakos from One World's accounts, and whether Chaleplis was reimbursed for that payment, are questions of fact to be decided by the jury. And Manolakos' apparent belief that he was entitled to the $70,948 as repayment for his loan to Conmave is not dispositive, because "[i]t is no defence to an action for conversion that a defendant who exercised dominion over the goods did so in good faith reasonably being mistaken in thinking the facts to be such as would give him a legal right to the goods." *Row v. Home Sav. Bank*, 306 Mass. 522, 525 (1940); *accord Kelley v. LaForce*, 288 F.3d 1, 12 (1st Cir. 2002).

In sum, all of the defendants are entitled to summary judgment on One World's theories of conversion concerning Manolakos' loan to Onoufriadis for the Boston condominium and the mortgage on that condominium. And Quick Manufacturing and Quick Properties are entitled to summary judgment on One World's theory of conversion concerning Manolakos' receipt of $70,948 from One World. Only one narrow conversion claim—One World's claim of conversion against Manolakos regarding the $70,948—will proceed to trial.

## III.    <u>Conspiracy to Commit, and Aiding and Abetting, Conversion.</u>

One World next asserts that the defendants engaged in a conspiracy with Onoufriadis to commit conversion. To prevail on its "concerted action" conspiracy claim, One World must establish "'a common plan to commit a tortious act where the participants [knew] of the plan and its purpose and [took] affirmative steps to encourage the achievement of the result.'" *Greene v. Philip Morris USA Inc.*, 491 Mass. 866, 871-72 (2023) (quoting *Kurker v. Hill*, 44 Mass. App. Ct. 184, 189 (1998)). Because this claim "is 'akin to a theory of common law joint liability in tort,'" *id.* at 871 (quoting *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1564 (1st Cir. 1994)), One World must "prove an underlying tort," *Snyder v. Collura*, 812 F.3d 46, 52 (1st Cir. 2016). It also "must show that [the] defendants either (1) acted 'in concert with or pursuant to a common

design with' [Onoufriadis] or (2) 'gave substantial assistance to' [his] conduct." *Thomas v. Harrington*, 909 F.3d 483, 490 (1st Cir. 2018) (quoting *Kyte v. Philip Morris Inc.*, 408 Mass. 162, 167 (1990)).

One World separately asserts that the defendants aided and abetted conversion. To succeed on this claim, it must similarly establish that (1) Onoufriadis committed conversion; (2) the defendants knew that he was committing conversion; and (3) they "'actively participated in or substantially assisted in [the] commission of the tort.'" *Mass. Port Auth. v. Turo Inc.*, 487 Mass. 235, 244 (2021) (quoting *Go-Best Assets, Ltd. v. Citizens Bank of Mass.*, 463 Mass. 50, 64 (2012)). As One World recognizes, the aiding and abetting claim rises and falls with the civil conspiracy claim. *See* ECF 261, at 16 (seeking summary judgment on this claim for "the same reasons" as their conspiracy to commit conversion claim); *Kyte*, 408 Mass. at 168-69 (characterizing conspiracy claim based on substantial assistance as an "aiding and abetting theory").

Both claims require One World to show that its funds were converted. As explained, a reasonable jury could conclude, based on the record evidence, that $70,948 was misappropriated from One World when Onoufriadis transferred that amount from One World's account to Manolakos. The jury could also determine that, in accepting $70,948 from One World as final payment on the Conmave loan, Manolakos acted in concert with Onoufriadis or provided him with substantial assistance. Although Manolakos averred that he "was not a part of any conspiracy to steal and/or misappropriate monies from Gabriel Chaleplis and/or One World LLC," ECF 266-1, ¶ 35, the existence of the alleged conversion scheme between Onoufriadis and Manolakos could reasonably be inferred from their conduct surrounding the $70,948 payment, *see Kyte*, 408 Mass. at 167 ("[A]n inference of an implied agreement could properly be drawn from the conduct of two or more parties."); *Thomas*, 909 F.3d at 492 (evidence can be used "to infer that [the defendant]

was aware of [the] wrongful purpose").[6] The parties agree that "Manolakos did not question the $70,948 payment's source and never returned it, despite his account statement detailing that the $70,948 payment was from One World." ECF 276, ¶ 63. While this "was the full and final amount owed to [Manolakos] from the Conmave loan," the fact that the money came from One World, not Conmave, could have put Manolakos on notice that the funds were improperly received. ECF 266-1, ¶ 26. Based on this evidence, a reasonable jury could infer the existence of a conspiracy between Onoufriadis and Manolakos to misappropriate $70,948 from One World under both the "common design" and "substantial assistance" theories,[7] and that Manolakos aided and abetted Onoufriadis in converting those funds. Insufficient evidence exists, however, to establish that Quick Manufacturing or Quick Properties conspired with Onoufriadis or aided and abetted him in siphoning $70,948 from One World, because no evidence links the corporate defendants to that transaction.

One World's separate contention that the defendants took part in a larger conspiracy with Onoufriadis to divert $9 million from One World, and assisted Onoufriadis in impermissibly using One World's funds to purchase the Boston condominium, cannot survive summary judgment. One World posits that Onoufriadis, as its manager, orchestrated a conspiracy to funnel that money to himself and others through unauthorized wire transfers from its accounts. The Court can assume, without deciding, that Onoufriadis executed such illicit wire transfers. Even so, a reasonable jury

---

[6] Chaleplis testified that he did know whether there was an express agreement between Onoufriadis and Manolakos. ECF 266-3, at 149:9-150:14.

[7] The first theory requires One World to show "'a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act.'" *Thomas*, 909 F.3d at 490 (quoting *Aetna Cas. Sur. Co.*, 43 F.3d at 1564). Under the second theory, "'a person may be liable in tort if he [knew] that the . . . conduct [of another person] constitute[d] a breach of duty and [gave] substantial assistance or encouragement to the other so to conduct himself.'" *Id.* at 491 (quoting *Kurker*, 44 Mass. App. Ct. at 189).

could not infer, from the record evidence, that the defendants knew of, acted in concert with, or gave substantial assistance to this conduct.[8] The mere fact that Quick Manufacturing listed on its website the same Greek address as Conmave's address does not suggest that the defendants conspired with Onoufriadis to divert millions of dollars from One World. Manolakos averred that "it made [him] feel proud to have a Greek address on [Quick Manufacturing's] website," and that he did so "for marketing purposes." ECF 266-1, ¶ 16. One World also relies on a January 8, 2019 text thread, in which Chaleplis asked Onoufriadis who Manolakos was, and Onoufriadis responded that Manolakos was his "friend from the US whom we put in the middle so we can give you cash back." ECF 263-13. This text does not create a dispute of material fact about the defendants' knowledge of, or participation in, Onoufriadis' alleged diversion scheme. Even assuming that this text has been accurately translated from Greek without an accompanying certificate of translation, the text does not indicate that Manolakos was *aware* that he was "in the middle" of Onoufriadis' scheme. *See* ECF 276, ¶¶ 127-28. It merely states that Onoufriadis used Manolakos to provide Chaleplis with cash. Manolakos' decisions to loan his friend Onoufriadis over $1.5 million for a Boston condominium, and to obtain two $1 million bank loans to finance that property while allegedly misrepresenting that the loans would be used for business purposes, also cannot reasonably give rise to the inference that Manolakos knew that he would be repaid with stolen funds from One World as opposed to proceeds from the property's eventual sale.

At bottom, One World's efforts to connect Manolakos, Quick Manufacturing, and Quick Properties to Onoufriadis' larger alleged diversion scheme relies solely on speculation. This is not sufficient to withstand summary judgment. *See BI 40 LLC v. Tewksbury Living Grp., LLC*, No.

---

[8] Onoufriadis was not deposed in this action, and the limited excerpts from his deposition transcripts in a related state court action do not indicate that the defendants participated in his alleged scheme. *See* ECF 263-36, 263-49, 263-50, 263-51.

21-cv-11904-PBS, 2025 WL 484092, at *15 (D. Mass. Feb. 13, 2025) (rejecting conspiracy claim where plaintiff relied on speculative inferences at summary judgment). "Evidence of the defendant's knowledge of its substantial, supporting role in an unlawful enterprise is required," and One World has not pointed to any such evidence. *Kyte*, 408 Mass. at 168; *see Kurker*, 44 Mass. App. Ct. at 189 ("Key to [the civil conspiracy] cause of action is a defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan."). Manolakos avers that he "was not a part of any conspiracy to steal and/or misappropriate monies from Gabriel Chaleplis and/or One World LLC." ECF 266-1, ¶ 35. Absent evidence contradicting this averment or sufficiently indicating the defendants' knowledge of Onoufriadis' conspiracy to siphon $9 million from One World, including for his Boston condominium purchase, One World's claims of conspiracy to commit, and aiding and abetting, conversion with respect to his larger alleged misappropriation scheme cannot proceed to trial. *See Go-Best Assets Ltd.*, 463 Mass. at 64 ("none of the aiding and abetting claims survive[d] summary judgment" because there was "no evidence that [defendant] knew of Goldings's intent to misappropriate [plaintiff's] funds or shared his intent to accomplish the misappropriation" and "no evidence that the [defendant] actively participated in or substantially assisted in any . . . conversion committed by Goldings"); *Kyte*, 408 Mass. at 168-69 (granting summary judgment for defendant on civil conspiracy claim in part because its "affidavits stating that it had no knowledge of illegal sales . . . remain[ed] uncontroverted"); *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 36 (1st Cir. 2009) (affirming summary judgment for defendants on civil conspiracy claim where there was "no evidence from which a reasonable jury could conclude that the appellees had the 'unlawful intent' necessary for substantial assistance liability").

IV.    <u>**Unjust Enrichment.**</u>

One World next asserts that the defendants were unjustly enriched by "their receipt and use of [its] misappropriated funds." ECF 75, ¶ 294. "Unjust enrichment is the 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Columbia Plaza Assocs. v. Ne. Univ.*, 493 Mass. 570, 588-89 (2024) (quoting *Sacks v. Dissinger*, 488 Mass. 780, 789 (2021)). Instructive here, Massachusetts courts have found "no error in removing" from trial an unjust enrichment claim premised on the defendants' "allegedly unlawful retention of [plaintiff's] property," when the unjust enrichment claim does "not state a separate cause of action, but rather a theory of recovery," and seeks "the same [damages] as those alleged in the conversion claim." *Vaks v. Ryan*, 2012 Mass. App. Div. 17 (Dist. Ct. 2012); *see also Lopes v. Commonwealth*, 442 Mass. 170, 179 (2004) (an unjust enrichment claim "does not state a separate cause of action, but a theory of recovery").

Here, too, One World's claims of unjust enrichment and conversion both rely on identical evidence and seek the same damages. *See* ECF 261, at 16. Moreover, "'[a]n equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law.'" *Tedeschi-Freij v. Percy L. Grp., P.C.*, 99 Mass. App. Ct. 772, 780 (2021) (quoting *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005)); *accord Schuster v. Wynn Ma, LLC*, 118 F.4th 30, 38 (1st Cir. 2024). Because its claim for conversion based on Manolakos' receipt of $70,948 from One World will proceed to trial, One World has an adequate remedy at law. *See Sazerac Co., Inc. v. Smith*, No. 14-cv-10053-JCB, 2015 WL 12697651, at *7 (D. Mass. Mar. 6, 2015) (granting summary judgment to defendant on unjust enrichment claim where plaintiff "ha[d] an adequate remedy at law" due to its conversion claim). The defendants are, accordingly, entitled to summary judgment on One World's unjust enrichment claim.

## V.    Conspiracy to Commit, and Aiding and Abetting, Legal Fraud.

One World next asserts that the defendants engaged in a conspiracy to commit, and aided and abetted, "legal fraud upon [it] in coordination with Onoufriadis" and others. ECF 75, ¶¶ 305, 309. To prove those two claims, One World must show that the defendants knew that Onoufriadis was committing fraud and substantially assisted him in doing so. *Greene*, 491 Mass. at 871; *Mass. Port Auth.*, 487 Mass. at 244; *see, e.g.*, ECF 274, at 14-17; ECF 283, at 6-8. "The elements of fraud consist of '[1] a false representation [2] of a matter of material fact [3] with knowledge of its falsity [4] for the purpose of inducing [action] thereon, and [5] that the plaintiff relied upon the representation as true and acted upon it to his [or her] damage.'" *Balles v. Babcock Power Inc.*, 476 Mass. 565, 573 (2017) (quoting *Danca v. Taunton Sav. Bank*, 385 Mass. 1, 8 (1982)).

To support these claims, One World points to alleged misrepresentations in Manolakos' two bank loans. It is undisputed that Manolakos secured the North Shore Bank loan as a "business investment." ECF 276, ¶ 183. In One World's telling, Manolakos improperly obtained that loan and his prior commercial and industrial loan for purposes unrelated to his businesses—namely, to finance Onoufriadis' Boston condominium. But even if those statements were misrepresentations, they would amount to false representations to the two banks, not to One World. *Cf. Movitz v. Home Depot U.S.A., Inc.*, 82 F. App'x 230, 231-32 (1st Cir. 2003) (affirming denial of leave to amend complaint to add a claim of conspiracy to commit fraud in part because plaintiff did "not allege that anyone at [defendant] misrepresented any facts to him"). And, as discussed, it does not reasonably follow from those representations that the defendants knew about, or actively participated in, Onoufriadis' vast alleged scheme to misappropriate One World's funds, particularly given Manolakos' sworn declaration averring that he "was not a part of any conspiracy to steal and/or misappropriate monies from Gabriel Chaleplis and/or One World LLC." ECF 266-

1, ¶ 35; *see Town of Westport v. Monsanto Co.*, 877 F.3d 58, 66 (1st Cir. 2017) ("'[J]udges cannot allow conjecture to substitute for the evidence necessary to survive summary judgment.'" (quoting *Pina v. Children's Place*, 740 F.3d 785, 802 (1st Cir. 2014))). Absent such evidence, the defendants are entitled to summary judgment on the plaintiffs' claims of conspiracy to commit legal fraud and aiding and abetting of that fraud. *See Go-Best Assets Ltd.*, 463 Mass. at 64 (affirming summary judgment on aiding and abetting fraud claim where there was no evidence that defendant intentionally or "actively participated in or substantially assisted in any fraud").

## VI. **Declaratory Judgment.**

One World's final claim seeks a declaration stating that its "ownership interest, property interest and/or title for the" Boston condominium has priority over that of the defendants, and that it is entitled to any funds that Manolakos received from the closing of that condominium. ECF 75, ¶¶ 302-03; *see* ECF 270, at 18.[9] The Declaratory Judgment Act, 28 U.S.C. § 2201, "does not by itself create a federal cause of action." *Tyngsboro Sports II Solar, LLC v. Nat'l Grid USA Serv. Co., Inc.*, 88 F.4th 58, 64 (1st Cir. 2023). Because the statute merely "creates a remedy, not a cause of action," a plaintiff must assert "actual [underlying] claims." *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 n.3 (1st Cir. 2007); *see MSP Recovery Claims Series 44, LLC v. Hanover Ins. Co., Inc.*, No. 22-cv-40087-FDS, 2024 WL 4252686, at *7 (D. Mass. Sept. 20, 2024) ("[P]laintiff must identify an underlying cause of action for which it seeks declaratory relief.").

To support this claim, One World relies on the same arguments and evidence that it invoked in asserting that the February 2021 mortgage on the Boston condominium, which Onoufriadis

---

[9] The amended complaint also sought relief concerning another property in Middleton, Massachusetts, but One World no longer seeks a declaration related to that property. *See* ECF 75, ¶¶ 302-03; ECF 270, at 18. Its counsel confirmed at the motion hearing that this property is not relevant to the merits of the parties' cross-motions for summary judgment.

granted to Manolakos, was a "sham." ECF 270, at 16. Having already concluded that One World fails to raise a genuinely disputed issue of material fact with respect to that mortgage, the Court will enter judgment for the defendants on the declaratory judgment claim for the same reasons. *See McGillen v. JP Morgan Chase Bank, N.A.*, No. 19-cv-11917-LTS, 2020 WL 519997, at *6 (D. Mass. Jan. 31, 2020) (dismissing plaintiffs' declaratory judgment claim "seeking a declaration that the 2007 Mortgage Loan [was] invalid and unenforceable" because it was "based on the same actionable conduct" as their underlying time-barred claims). Summary judgment in favor of the defendants is also appropriate because this claim is duplicative of the underlying tort claims. *See Chaleplis v. Karloutsos*, 579 F. Supp. 3d 685, 706 n.3 (E.D. Pa. 2022) (dismissing declaratory judgment claim in a related case brought by Chaleplis and One World in part because their requested relief, "even if only applied to the misappropriated funds used toward the down payments on the respective homes, would still be . . . duplicative of their other requested relief"); *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 236-37 & n.10 (1st Cir. 2013) (affirming dismissal of declaratory relief claim as duplicative of underlying breach of contract claim).

## CONCLUSION AND ORDER

For the foregoing reasons, the plaintiffs' motion for summary judgment, ECF 260, is DENIED. The defendants' motion for summary judgment, ECF 264, is GRANTED in part and DENIED in part. The motion is DENIED with respect to One World's claims against Manolakos for conversion, conspiracy to commit conversion, and aiding and abetting conversion premised only on his receipt of $70,948 from One World as final payment on his loan to Conmave. The motion is GRANTED with respect to all other claims, including all of One World's remaining claims against Manolakos, all of One World's claims against Quick Manufacturing and Quick

Properties, and all of Chaleplis' claims. The plaintiffs' motion to supplement the summary judgment record, ECF 298, is GRANTED.

      SO ORDERED.

                                      /s/ Julia E. Kobick
                                      JULIA E. KOBICK

Dated: September 30, 2025               UNITED STATES DISTRICT JUDGE